**Amelia Bales SAUNDERS, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–99–00249–CR.**

Court of Appeals of Texas, Eastland.

May 31, 2001.

---

**538**

Shane Deel, Abilene, for appellant.

Allen Wright, County Attorney, Baird, Robert R. Rennich, Assistant Attorney General, Austin, for appellee.

Panel consists of: WRIGHT, J., and McCALL, J., and McCLOUD, S.J.*

---

\* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland

Opinion

McCLOUD, Senior Justice (Retired).

The jury found appellant guilty of capital murder, and the trial court assessed her punishment at confinement for life. Appellant appeals. We affirm.

The record reflects that appellant employed Gerald Wayne Arnold to shoot and kill her husband. On or about April 10, 1997, Gerald, for remuneration and the promise of remuneration, shot and killed the victim. Gerald testified for the State that on April 10, 1997, he and his brother, Wayland Arnold, went to the victim's shop located behind the house of the victim and appellant. The victim drove his pickup into the shop. After the victim got out of his pickup, Gerald shot the victim several times with a handgun given to him by appellant. Gerald and Wayland then put the victim's body into the victim's pickup. Gerald testified that he used sheets to clean up the blood. Gerald stated that he picked up two or three cartridge casings after putting the body in the pickup. Gerald told Wayland to follow him in appellant's vehicle. Gerald drove the victim's pickup, and Wayland followed in appellant's vehicle. They drove for several miles before they stopped and left the body of the victim in the victim's pickup beside the highway. They disposed of the bloody sheets in a culvert a few miles from where they had left the victim. The two then returned in appellant's vehicle and left the vehicle down the road from appellant's house. Gerald stated that they later burned their clothing and melted the gun with a cutting torch. Gerald stated that appellant paid him money before and after the murder.

sitting by assignment.

Wayland Arnold also testified for the State. His testimony regarding the murder was essentially identical to the testimony of Gerald. He stated that Gerald told him that appellant would pay Gerald $2,500 to kill the victim and that Gerald offered to pay Wayland one half of the money if he would help Gerald kill the victim. The sufficiency of the evidence is not challenged.

■ Appellant's first two points of error relate to the presence of an interpreter for a deaf juror in the jury room while the jury was deliberating. Appellant argues in her first point that the presence of the interpreter violated the express language in TEX. CODE CRIM. PRO. ANN. art. 36.22 (Vernon 1981), which states that "[n]o person shall be permitted to be with a jury while it is deliberating." In the second point, appellant maintains that her conviction should be reversed because the interpreter who accompanied the deaf juror into the jury room was not administered the oath that is required. Appellant also contends that her rights to a trial by an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Texas Constitution were violated.

■ First, we note that appellant failed to object in the trial court to either of the complaints being urged on appeal. We think that appellant has failed to preserve her complaints for appellate review. TEX. R.APP.P. 33.1(a). We will, however, discuss appellant's contentions. Appellant's position in her first point of error was rejected by the Texas Attorney General in Op. Tex. Att'y Gen. No. DM–392 (1996). We agree with the attorney general's opinion, and we will discuss some of the authorities found in the attorney general's opinion.

TEX. GOV'T CODE ANN. § 62.1041(a), (b), & (c) (Vernon 1998) provides:

(a) A deaf or hard of hearing person is not disqualified to serve as a juror solely because of hearing loss except as provided by this section.

(b) A deaf or hard of hearing person is disqualified to serve as a juror if, in the opinion of the court, his hearing loss renders him unfit to serve as a juror in that particular case.

(c) A deaf or hard of hearing person serving as a juror shall be reasonably accommodated in accordance with the Americans with Disabilities Act (42 U.S.C. Section 12101 et seq.). An interpreter who is assisting a deaf or hard of hearing person serving as a juror may accompany the juror during all proceedings and deliberations in the case.

It is apparent that Section 62.1041(a), (b), & (c) and Article 36.22 are in irreconcilable conflict. Section 62.1041(a), (b), & (c) must prevail over Article 36.22 because Section 62.1041(a), (b), & (c) is the later enacted statute. TEX. GOV'T CODE ANN. § 311.025 (Vernon 1998).

The attorney general also relies upon TEX. CIV. PRAC. & REM. CODE ANN. §§ 21.002(a) and 21.009 (Vernon 1997). Section 21.002(a) states:

In a civil case or in a deposition, a deaf person who is a party or witness is entitled to have the proceedings interpreted by a court-appointed interpreter. A deaf person who is a juror *in any case* is entitled to have the proceedings interpreted by a court-appointed interpreter. (Emphasis added)

Section 21.009 states:

(a) The interpreter appointed for a juror may be present and assist the juror during the jury deliberation.

(b) The presence of the interpreter during jury deliberations does not affect the validity of a verdict.

Arguably, Section 21.002(a) and 21.009 apply only to civil cases because they are found in the Texas Civil Practice and Remedies Code. However, as observed by the attorney general, if that is true, then the words "in any case" in Section 21.002(a) are meaningless. The Texas Civil Practice and Remedies Code contains the procedure for a legislative continuance in both civil and criminal suits. TEX. CIV. PRAC. & REM. CODE ANN. § 30.003 (Vernon 1997). Section 30.003 specifically states that the section applies "to any criminal or civil suit." Likewise, Section 21.002(a) specifically states that it applies to a deaf person who is a juror "in any case." The attorney general finds, and we agree, that, under the Code Construction Act,[1] Sections 21.002(a) and 21.009 are specific provisions and will prevail over Article 36.22. TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998).[2]

The court in *United States v. Dempsey*, 830 F.2d 1084 (10th Cir.1987), cited in the attorney general's opinion, held that the presence of an interpreter during jury deliberations did not deprive the defendant of his right to a fair and impartial trial by jury under the Sixth and Fourteenth Amendments. See also *De Long v. Brumbaugh*, 703 F.Supp. 399 (W.D.Pa.1989); *New York v. Guzman*, 76 N.Y.2d 1, 556 N.Y.S.2d 7, 555 N.E.2d 259 (N.Y.1990). We overrule appellant's first point of error.

■ In arguing her second point, appellant cites us to that part of the attorney general's opinion where it is stated that:

1. TEX. GOV'T CODE ANN. § 311.001 et seq. (Vernon 1998).

2. We point out that TEX. CODE CRIM. PRO. ANN. art. 38.31 (Vernon Pamph. Supp. 2001), which expressly deals with the appointment

Only a duly qualified interpreter who has taken the oath set forth in Section 21.005 of the Civil Practice and Remedies Code is permitted to accompany a deaf juror into the jury room.

TEX. CIV. PRAC. & REM. CODE ANN. § 21.005 (Vernon 1997) states:

(a) The interpreter shall take an oath that the interpreter will:

(1) make a true interpretation to the deaf person of all the case proceedings in a language that the deaf person understands; and

(2) repeat the deaf person's answers to questions to counsel, court, or jury in the English language, using the interpreter's best skill and judgment.

(b) An interpreter appointed for a juror shall also take an oath that the interpreter will not:

(1) participate in any manner in the deliberations of the jury;

(2) communicate with any member of the jury regarding the deliberation of the jury except a literal translation of a juror's remarks made during deliberations; or

(3) disclose any of the deliberations with any person following a verdict.

The record in this case fails to show that the interpreter was given the oath contained in Section 21.005 or any other type of interpreter's oath. The record does, however, reflect the following discussion by the trial court with the jurors regarding the interpreter immediately after the jury was selected:

of an interpreter for a deaf person and the oath to be given to the interpreter, applies only to a deaf defendant or witness. The article does not discuss a deaf juror.

The lady sitting out here is [the interpreter]. She is an interpreter from Fort Worth. You can see she is signing for [the juror]. And she is going to be a part of your lives for the next week because she is here to assist and facilitate [the juror] in understanding this testimony. She is not a member of your jury. Okay. She won't help you in the case. She won't give you advice when the jury is actually deliberating. She won't participate in any deliberation. She won't vote. She won't remind you of the evidence. She is only strictly here to communicate between [the juror] and the jury while you are deliberating and to translate all the evidence, that is all the oral evidence for [the juror] so he can participate in this process. This is going to be a unique experience. I am very pleased [the juror] had the opportunity to get on this jury. I know he appreciates it too.

It is obvious that the court's instructions were directed to the interpreter as well as the members of the jury. The court in *Beck v. State*, 719 S.W.2d 205 (Tex.Cr.App. 1986), reviewed at length the issue of testimony being introduced by an unsworn witness. The court held that the objection to unsworn testimony comes too late if made after the verdict. The court pointed out that almost every right, constitutional and statutory, may be waived by the failure to object. In *Lara v. State*, 761 S.W.2d 481 (Tex.App.—Eastland 1988, no pet'n), we cited *Beck* in holding that the failure to administer an oath to an interpreter was waived. See also *Mendez v. State*, 42 S.W.3d 347 (Tex.App.—Eastland 2001, pet'n pending). Appellant failed to object in the trial court that an oath was not administered to the interpreter. Appellant's second point of error is overruled.

█ In her third, fourth, and fifth points of error, appellant challenges the admissibility of the evidence introduced by the State pursuant to a search warrant issued on April 23, 1997. Appellant asserts violations of the Fourth Amendment to the United States Constitution; Article I, section 9 of the Texas Constitution; and TEX. CODE CRIM. PRO. ANN. art. 38.23 (Vernon Pamph. Supp. 2001).

█ The trial court held a pretrial hearing, based upon appellant's written motion to suppress, regarding the admissibility of the evidence removed from a small shop located behind the residence of appellant and the victim. At the pretrial hearing, the State introduced the search warrant. Appellant presented no evidence. The State presented no evidence other than the warrant. The trial court denied appellant's motion to suppress. The burden of proof was on appellant to show the invalidity of the warrant. *Russell v. State*, 717 S.W.2d 7 (Tex.Cr.App.1986).

In her third point, appellant relies upon the testimony of Texas Ranger Calvin Cox during the guilt-innocence stage of the trial. Ranger Cox testified that on April 23, 1997, he, along with other law enforcement officers, went to appellant's home. Ranger Cox stated that no one was at the house but that the officers saw someone at the shop located behind the house. As the officers walked toward the shop, the district attorney, who was with the officers, noticed two holes in the tin wall in the back of the shop. The district attorney asked Ranger Cox if the holes could be bullet holes. Ranger Cox stated that they walked around behind the shop to see if the holes exited through the tin. Ranger Cox testified that the holes did exit and that he told the officers that one of the holes looked like a bullet hole and that the other hole could be a bullet hole if the bullet was tumbling when it went through the tin wall.

Ranger Cox testified that, after observing the holes in the wall, the officers walked around to the front of the shop and that one of the officers introduced Ranger Cox to Bobby Williams. Ranger Cox was told by an officer that Williams, who worked on cars at the shop, shared the shop with the victim. Ranger Cox stated that Williams told the officers that he had access to the entire shop. Ranger Cox testified that the officers had permission from Williams to enter the shop and look around. When they examined the area where the victim worked and where they had observed the holes in the wall, the officers saw two cartridge casings from expended bullets. At that point, some of the officers were sent to get a search warrant. Nothing inside the shop was moved or picked up until the officers returned with the search warrant in question.

Appellant maintains that the "walking around behind the shop" by the officers, as admitted by Ranger Cox, constituted an illegal warrantless search and that such illegal search tainted all the evidence that was later discovered. First, we note that the evidence relied upon by appellant was not presented at the pretrial suppression hearing and was not before the trial court when the court denied appellant's motion to suppress. Furthermore, the unchallenged testimony of Ranger Cox shows that Williams, who shared possession of the shop with the victim, freely and voluntarily consented to the officers entering the shop and looking around. Appellant's third point of error is overruled.

■■■ In her fourth and fifth points, appellant challenges the affidavit in support of the search warrant. The affidavit was signed by Officer Gary Lindsey, the district attorney's investigator who had been with Ranger Cox when the officers discovered the suspicious holes and cartridges in the shop. Whether the facts alleged in a probable cause affidavit sufficiently support a search warrant is determined by examining the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The magistrate is permitted to draw reasonable inferences from the facts and circumstances alleged. Reviewing courts should accord great deference to the magistrate's determination. *Ramos v. State*, 934 S.W.2d 358 (Tex.Cr.App.1996), *cert. den'd*, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997). The court in *Johnson v. State*, 803 S.W.2d 272, 288 (Tex.Cr.App. 1990), *cert. den'd*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681, 682, 690 (1991), said:

> The task of the issuing magistrate is to make a practical common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

The affidavit states that it was made by Officer Lindsey. Officer Lindsey described the property to be searched and stated that it was controlled by appellant and Williams. The officer stated that he believed that the described land was the possible location where the victim was murdered. Officer Lindsey stated in his affidavit that his belief was based upon personal observation and information that he had received from other officers. The affidavit revealed that the victim was discovered in a pickup in Shackelford County. The victim died from gunshot wounds on or about April 10 or 11, 1997, and the preliminary autopsy indicated that the bullets had entered and exited the body. The victim was last seen alive around Clyde where he lived. The victim carried a 9 millimeter pistol in his truck, and the gun

was missing. Officer Lindsey then related the incident where Ranger Cox went to the residence of the deceased and appellant to question appellant. The affidavit contained the information relating to Ranger Cox's going to the residence and discovering the holes in the metal building that were possibly made by a bullet. Officer Lindsey stated that, upon examination of the building, "what appeared to be blood on a paper towel or sack and two cartridges which appeared to be from a 9 millimeter weapon were seen in plain view in the shop area on the cement floor." No doubt, the affidavit could have been more fully developed. We think, however, that the issuing magistrate, in making a "common sense decision," could have concluded from the affidavit that there was a fair probability that "contraband or evidence of a crime" would be found in the building. See *Johnson v. State*, supra at 288. Appellant's fourth and fifth points are overruled.

■ Appellant urges in her sixth point that her conviction should be reversed because the deaf juror disobeyed the trial court's instruction by conversing with someone about the case or by reading a news account about the case. The record reflects that, after the trial court accepted the verdict of the jury, the court instructed the jurors that, after they were discharged, the jurors were free to discuss the case with anyone. The trial court then told the jury that they were "discharged." Following the discharge of the jury, the court then asked appellant if there was any legal reason why sentence should not be imposed. Appellant's attorney answered that there was no legal reason for not imposing sentence. The trial court then sentenced appellant.

The record reflects the following statement by the deaf juror, through the interpreter, after the discharge of the jury and the sentencing of appellant:

I just wanted to tell you something. That I wanted to thank all of you for letting me have the interpreter and to thank you for letting me be in this trial process. It's been a good example for the other deaf people throughout the country. *And I want to thank that they allowed the article about the interpreter.* Thank you very much. (Emphasis added)

Appellant argues that the trial court erred in not granting her motion for new trial because the record demonstrates that the juror conversed with an unauthorized person about the case. See TEX. R.APP.P. 21.3(f); *Quinn v. State,* 958 S.W.2d 395 (Tex.Cr.App.1997). Appellant's trial attorney testified at the hearing on the motion for new trial that, within two or three minutes after the jury reached its verdict, the deaf juror made the statement. The record does not show that the juror conversed with an unauthorized person about the case. The statement, through the interpreter, occurred after the jury had been discharged. Appellant speculates that, because of the short interval of time between the jury's verdict and the juror's statement, the juror had conversed with an unauthorized person about the case at sometime during the trial. Of course, the interpreter could have informed the juror, after the discharge and before the statement, by signing to the juror that an article had been written. Appellant has failed to show that the juror conversed with an unauthorized person about the case. Appellant's sixth point is overruled.

Appellant includes several alleged errors in her seventh point. The record fails to show that the alleged errors were properly preserved in the trial court. Rule 33.1(a). Appellant's "accumulated" error argument

contained in her final point of error is overruled.

The judgment of the trial court is affirmed.