The STATE of Texas, Appellant,

v.

David Russell DUNCAN, Appellee.

Nos. 2–01–293–CR, 2–01–294–CR.

Court of Appeals of Texas, Fort Worth.

March 28, 2002.

Rehearing Overruled May 2, 2002.

Rehearing En Banc Denied June 13, 2002.

Bruce Isaacks, Crim. Dist. Atty., Kathleen A. Walsh, Jonnie Cleveland, Asst. Dist. Atty's of Denton, Matthew Paul, State Prosecuting Atty, of Austin, for Appellant.

Henry C. Paine, Jr., Denton, for Appellee.

Panel F: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

In these interlocutory appeals, the State appeals from the trial court's order granting a motion to suppress filed by appellee David Russell Duncan. In its sole point, the State contends that the trial court erred because the allegations in the search warrant affidavit were sufficient to support a probable cause finding that child pornography would be found in Duncan's residence. We will reverse and remand for trial on the merits.

### II. FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2000, a search warrant was executed at Duncan's residence located at 11196 Windjammer, Frisco, Denton County, Texas, resulting in the seizure of certain items including videocassette tapes and computer equipment. The items the search warrant authorized to be seized included, among other things, photographs and movies of child pornography, computer-related equipment, and videocassette tapes of child pornography or child erotica. The search warrant affidavit stated that child pornography and related items were at the suspected place and premises and were concealed and kept in violation of the laws of Texas.

The search warrant affidavit, executed on July 10, 2000, set forth as probable cause the following facts:

Affiant is Mike Shackleford, a certified peace officer and chief of police with the City of Oak Point Police Department, and is currently assigned to the investigation of this case.

Affiant's probable cause for the above belief is based upon information received from [M.W.] on July 6, 2000. [M.W.] stated to the Affiant that her date of birth is June 3, 1984. [M.W.] stated that the suspect lives at the address set out in item 1 above. Affiant stated that she has had a sexual relationship with the suspect in the past, off and on, during 1999 and 2000. She stated that she had broken off the relationship with the defendant. She stated that the suspect called her on her birthday this year, and they began talking again. She stated that the suspect told her that he had videotape of her and the suspect engaged in sexual relations. She stated that the suspect told her that he also had some photos of her and the suspect having sex. She stated that the suspect told her that he was going to put them out on the Internet and show them to some people. She stated that the suspect told her that he would not let her see the video because she was not the only person on the tape. [M.W.] told the Affiant the suspect was able to make this tape and take these photos without her knowledge during sexual relations.

The search warrant affidavit further stated:

Based upon the above information obtained from interviewing [M.W.], Affiant believes that the suspect has an elaborate set up for videotaping and photographing individuals while he is engaged in sexual activity. Affiant also believes that the suspect has computer equipment capable of transferring photographic images for transportation and dissemination over the Internet.

Two indictments were returned on September 28, 2000. Duncan was charged with unlawful interception of electronic communications and four counts of possession of child pornography. Duncan filed a motion to suppress under both cause numbers, and a hearing was held on May 25, 2001, at which the trial court considered argument of counsel and documentary evidence, but no testimony was presented. On June 4, 2001, the trial court granted the motion to suppress, and the State thereafter timely filed a notice of appeal from the trial court's order.

### III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review by giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law of search and seizure. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000). The trial court, in determining whether a probable cause affidavit sufficiently supports a search warrant, examines the totality of the circumstances and gives great deference to the magistrate's decision to issue the warrant. *Ramos v. State*, 934 S.W.2d 358, 362–63 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997); *Saunders v. State*, 49 S.W.3d 536, 542 (Tex.App.-Eastland 2001, pet. ref'd); *Williams v. State*, 37 S.W.3d 137, 140 (Tex.App.-San Antonio 2001, pet. ref'd); *Burke v. State*, 27 S.W.3d 651, 654 (Tex.App.-Waco 2000, pet. ref'd); *Wynn v. State*, 996 S.W.2d 324, 326–27 (Tex.App.-Fort Worth 1999, no pet.). In determining whether probable cause exists to issue a warrant, a magistrate may draw reasonable inferences from the affidavit and must interpret the affidavit in a com-

mon sense and realistic manner. *Ramos,* 934 S.W.2d at 362–63; *McFarland v. State,* 928 S.W.2d 482, 510 (Tex.Crim.App. 1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997); *Jones v. State,* 833 S.W.2d 118, 123–24 (Tex.Crim. App.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993); *Janecka v. State,* 739 S.W.2d 813, 823 (Tex.Crim. App.1987). The allegations in the affidavit are sufficient if they would "justify a conclusion that the object of the search is probably on the premises." *Ramos,* 934 S.W.2d at 363.

The rationale behind the rule requiring a trial court to give great deference to a magistrate's determination that a warrant should issue was explained by the Supreme Court:

> [The process of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Illinois v. Gates,* 462 U.S. 213, 231–32, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983).

█ Thus, we review the trial court's probable cause determination *de novo,* applying the same standard as the trial court, and we are required, as was the trial court, to give the magistrate's decision to issue the warrant *great deference.* This is because our review does not encompass the substantive issue that was before the magistrate at the time of the issuance of the warrant.[1] *Robuck v. State,* 40 S.W.3d 650, 654 (Tex.App.-San Antonio, 2001, pet. ref'd); *Lane v. State,* 971 S.W.2d 748, 752 (Tex.App.-Dallas 1998, pet ref'd). Such a review is prohibited under *Illinois v. Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (holding that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review"). Instead, we are to apply de novo the same standard of review required of the trial court. That standard is consideration of the totality of the circumstances *giving great deference to the magistrate's decision* to determine whether the magistrate had a substantial basis for concluding probable cause existed. *Lane,* 971 S.W.2d at 752 n. 3 (citing *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331).

The requirement that the trial court, as well as this court, give great deference to a magistrate's decision to issue a warrant promotes the Supreme Court's stated policy of preserving a peace officer's incentive to obtain a warrant instead of conducting warrantless searches. *See Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996) (explaining "the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches"). If trial and appellate courts give no deference to a magistrate's probable cause determination, then police possess no incentive to obtain a warrant.

---

1. The task of the issuing magistrate is to make a practical common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Johnson v. State,* 803 S.W.2d 272, 288 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds by Heitman v. State,* 815 S.W.2d 681, 682, 690 (Tex.Crim.App.1991).

Therefore, although we apply a de novo standard of review to the trial court's probable cause determination, we also are required to view the affidavit, which the magistrate found sufficient to support a finding of probable cause to issue a warrant, with deference towards the magistrate's decision. *See Wynn*, 996 S.W.2d at 327 (applying de novo standard of review to probable cause determination while giving great deference to the inferences drawn by law enforcement officers). That is, we are to defer to the reasonable inferences made by the magistrate in issuing the warrant, and to defer to the magistrate's common sense and realistic interpretation the affidavit. *See, e.g., Lane*, 971 S.W.2d at 752 n. 3 (applying this de novo standard but deferring to magistrate's decision). *But see Barton v. State*, 962 S.W.2d 132, 137 (Tex.App.-Beaumont 1997, pet. ref'd) (refusing to apply de novo standard of review); *Ramos v. State*, 31 S.W.3d 762, 765 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (conducting a de novo review of the affidavit).

This standard is consistent with *Guzman's* mandate that we review probable cause determinations de novo, but give deference to the factfinder's factual determinations. *See Guzman v. State*, 955 S.W.2d 85, 89–90 (Tex.Crim.App.1997). When a magistrate issues a warrant, the magistrate is the equivalent of a factfinder who engages in reasonable inferences and gives a common sense interpretation to the affidavit. Therefore, we, like the trial court, are to review the affidavit with deference toward any reasonable inferences the magistrate could have made from the facts and with deference toward the magistrate's common sense and practical interpretation of the affidavit.

## IV. SEARCH WARRANT SUPPORTED BY PROBABLE CAUSE

Applying this standard, looking to the four corners of the affidavit, giving the magistrate's decision to issue the warrant great deference by deferring to the reasonable inferences from the facts set forth in the affidavit and the common sense and practical interpretation of the affidavit, we hold that considering the totality of the circumstances, a probability existed that child pornography would be found at Duncan's residence. *See, e.g., Lane*, 971 S.W.2d at 753 (citing *Jones*, 833 S.W.2d at 123). It is not unreasonable for the magistrate to have inferred that the sexual conduct between Duncan and the sixteen-year-old girl took place at Duncan's home. Nor is it unreasonable for the magistrate to have inferred that Duncan's "elaborate set up for videotaping and photographing" people he engaged in sexual activities with would probably be located in Duncan's residence. The State explained it well:

> Sexual activity is usually an intimate, private matter. It is common knowledge that sexual activity most often takes place in one's home, especially if it is an ongoing, long-term relationship. It is highly unlikely that this illegal sexual activity would have taken place in the child's home. It makes sense that a person would keep their records of this intimate activity in their home, a place not subject to the eyes of the public absent invitation. Appellee's statements to the girl that he had videotaped and photographed them during sex and the fact that the girl did not know about it also support an inference that the activity took place at his home and evidence would be found there. It is easier for someone to hide video cameras and photography equipment in one's own home than it would be anywhere else that sexual activity might take place, such as a motel room.

A recent case concerning the adequacy of an affidavit to establish probable cause

for the issuance of a search warrant to search a residence for child pornography supports our conclusion. The Waco Court of Appeals recently held that a magistrate had a substantial basis for concluding that the appellant was in possession of child pornography on his home computer where the informant told the affiant he had seen photographs of nude children on the appellant's home computer, two of whom he recognized and believed to be under 17 years of age, as well as hundreds of pornographic pictures of children under password protected files. *Morris v. State*, 62 S.W.3d 817, 823–25 (Tex.App.-Waco 2001, no pet.).

The Amarillo Court of Appeals recently held, however, that an affidavit did not establish probable cause for a warrant to search an appellant's home where it was based on Internet transmission of child pornography by the screen name "MENU441@aol.com" because the affidavit did not sufficiently connect appellant with that screen name. *Taylor v. State*, 54 S.W.3d 21, 24–26 (Tex.App.-Amarillo 2001, no pet.) (discussing the lack of evidence connecting the screen name to appellant and the lack of evidence showing the contraband was susceptible to receipt or delivery from the specific site to be searched).

■ In this case, the July 10, 2000 affidavit in support of the search warrant stated that M.W. told Officer Shackleford that appellant had called her on her birthday, the previous June 3rd, and said that (1) he had a videotape and photographs of her and appellant having sexual relations, (2) he was going to put them out on the Internet and show them to some people, (3) she was not the only person on the tape, and (4) he was able to take the photos without her knowledge during sexual relations. The affidavit clearly established Appellant's recent possession of a videotape and photographs of him engaging in sexual relations with the sixteen-year-old girl, as well as his intent to put them out on the Internet. As discussed above, it was reasonable to infer that appellant possessed the videotape and pictures at his residence, particularly in light of his statement indicating that they had been made with hidden cameras. Thus, the present case is more akin to *Morris*, where the probable cause affidavit indicated the appellant possessed child pornography on his home computer than it is to *Taylor*, where the probable cause affidavit did not indicate that the appellant collected or possessed child pornography.

Considering the totality of the circumstances presented by the affidavit, deferring to the reasonable inferences from the facts provided, and deferring to a common sense and practical interpretation of the affidavit as understood by those versed in the field of law enforcement, we hold that a substantial basis existed for the magistrate's determination that child pornography and related items would probably be found in Duncan's residence. Consequently, we sustain the State's point.

## V. CONCLUSION

Having sustained the State's point, we reverse the trial court's order granting the motion to suppress and remand the cases for trial on the merits.

DAUPHINOT, dissents.

DAUPHINOT, Justice, dissenting.

I respectfully dissent to the majority's holding that the trial court erred in granting Duncan's motion to suppress. The majority reasons that the allegations in the search warrant affidavit were sufficient to justify the magistrate's conclusion that child pornography would probably be found in Duncan's residence.

The majority is correct in stating that we review a trial court's ruling on a motion to suppress under a bifurcated standard of review by giving almost total deference to the court's determination of historical facts and reviewing de novo the court's application of the law of search and seizure.[1] The analysis, however, does not end there. Where the trial court does not make explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling.[2] That is, we assume the trial court made implicit findings of fact supported in the record that buttress its conclusion.[3] If the trial court's decision is correct on any theory of law applicable to the case, it must be sustained.[4]

A search warrant must be based upon probable cause.[5] Probable cause sufficient to support the issuance of a search warrant exists where the facts contained within the four corners of the affidavit and the reasonable inferences drawn therefrom justify the magistrate's conclusion that the property that is the object of the search is probably on the premises to be searched at the time the warrant issues.[6] The affidavit must recite facts and circumstances within the affiant's knowledge and of which the affiant has reasonably trustworthy information sufficient to warrant a reasonably cautious person's belief that the offense has been committed and the evidence to be seized is at the particular place to be searched.[7] In evaluating whether probable cause existed for the issuance of a warrant, appellate courts must assess the totality of the circumstances presented.[8]

The State contends that the trial court erred in granting the motion to suppress because the allegations in the search warrant, in their totality, were sufficient to support a probable cause finding that child pornography would be found in Duncan's residence at the time the warrant was issued. The State argues that the reliability of the affiant and his sources of information are part of the "totality of the circumstances" that the magistrate should evaluate in making a probable cause determination and that the magistrate in this case was entitled to rely on the statements of the sixteen-year-old girl and the officer. While we recognize that a named citizen who is in a position to supply information by virtue of having been a crime victim or witness has an inherent reliability not attributed to police informants,[9] the information in an affidavit in support of a search warrant must nevertheless be complete and specific enough to constitute probable cause to search a particular place.[10]

In this case, the facts set forth within the four corners of the affidavit did not support a reasonable belief that the object of the search, child pornography, was probably at Duncan's residence at the time the warrant was issued. The affidavit

1. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000).

2. *Id.* at 327–28.

3. *Id.* at 328.

4. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim. App.2000).

5. *Wynn v. State*, 996 S.W.2d 324, 326 (Tex. App.-Fort Worth 1999, no pet.) (citing U.S. Const. amend. IV; Tex. Const. art. I, § 9).

6. *Id.*

7. *Id.*

8. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983)).

9. *See Lopez v. State*, 535 S.W.2d 643, 648 (Tex.Crim.App.1976).

10. *See generally* 2 Wayne R. LaFave, Search and Seizure § 3.4(c) (3d ed.1996).

does not quote M.W. as saying that she and Duncan had sexual relations at his parents' residence or that Duncan had told her that he had any photograph, videotape, or computer file of child pornography at that residence. Although the majority correctly states that the magistrate is permitted to draw reasonable inferences from information contained within the four corners of the affidavit, we cannot read into the affidavit information not gleaned from within the affidavit itself. As the court of criminal appeals has noted:

> It is one thing to draw reasonable inferences from information clearly set forth within the four corners of an affidavit. Thus, for example, it is sometimes permissible to presume reliability of an informant by virtue of the detailed nature of the information he supplies. It is quite another matter to read material information into an affidavit that does not otherwise appear on its face. We cannot, in the interest of a common-sense and realistic approach to interpretation of affidavits, "infer" a connection between informant's observation of appellant with contraband, and the residence at 724 Del Mar Street.[11]

As in *Cassias*, "[t]he assertion that the 'premises are in the possession and under the control of' appellant is not attributed to the informant. In fact, it is purely a conclusory statement, the source of which is not given nor the reliability vouched for." [12] A purely conclusory statement will not support the issuance of a warrant because it does not provide facts from which

a neutral magistrate may make the necessary findings.[13]

In *Wachter v. State*, the San Antonio Court of Appeals concluded that probable cause existed to support the issuance of a warrant to search for a runaway child, child pornography videos, and controlled substances.[14] In *Wachter*, allegations that the suspect was harboring a runaway were combined with his record involving child sexual assault and claims of his possession of videotapes of young women, demonstrating a continuing pattern of behavior. In addition, the affidavit in *Wachter* contained the allegation that a runaway and suggestive materials were seen at the suspect's residence within twenty-four hours of the warrant's issuance.[15] In the case now before us, however, the affidavit contains no allegations of contraband having been seen at Duncan's residence. Indeed, M.W. never claimed to have seen any photographic depiction of her engaging in intercourse with Appellant.

The State submits that what the affidavit lacks in this case can easily be provided through reasonable inferences based upon common knowledge and experience. The State thus argues that it is highly unlikely that the sexual activity described in the affidavit, which the State erroneously describes as "illegal," [16] would have taken place in M.W.'s home rather than Duncan's home and that it makes sense that a person would keep the records of this intimate activity in his home. The State further argues that it was not unreasonable for

---

**11.** *Cassias v. State*, 719 S.W.2d 585, 590 (Tex. Crim.App.1986) (op. on reh'g) (citation omitted).

**12.** *Id.* at 588 n. 2.

**13.** *Id.* at 590.

**14.** 961 S.W.2d 598, 602 (Tex.App.-San Antonio 1997, pet. ref'd).

**15.** *Id.*

**16.** *See* TEX. PENAL CODE ANN. § 22.011(e)(1) (Vernon Supp.2002) (providing that it is an affirmative defense to prosecution under subsection (a)(2) of section 22.011 that the actor was not more than three years older than the victim).

both the affiant and the magistrate to infer that Duncan had a computer in his home that probably contained evidence of child pornography. There are no allegations in the affidavit, however, from which any such inferences may be drawn. Nor does the affidavit contain any information from which a magistrate could draw the inference that the sexual activity could have occurred in only two possible places, Duncan's family's home or M.W.'s. Indeed, the State does not explain in its brief why it is more reasonable to speculate that the sexual activity between the two teenagers would have taken place in Duncan's home rather than in M.W.'s home, a friend's home, a motel, or even in the backseat of an automobile or the bed of a pickup truck.

In *Taylor v. State*, the Amarillo Court of Appeals recognized that general information in an affidavit about a pedophile's propensity to collect child pornography and maintain the collection at his home provided a basis to reasonably infer that contraband could probably be found in a suspect's home.[17] The *Taylor* court concluded, however, that the sending of one image over the Internet would not qualify the suspect as a pedophile where there was an absence of evidence that he collected child pornography or had an interest in it, and the magistrate could not have reasonably concluded that, like a pedophile, the suspect would maintain pornography at his residence.[18]

In this case, the affidavit contains no information that eighteen-year-old Duncan, who is nowhere described in the affidavit, is a pedophile or has a pedophile's propensities. Moreover, the allegations concerning Duncan's sexual relationship with the sixteen-year-old informant, his possession of a videotape and photographs of them having sexual relations, and his statements that he would put the pictures on the Internet do not establish him as a pedophile who probably maintains pornography at his residence. Even if, as the State and the majority urge, we may speculate that the two teenagers would prefer to risk discovery by Duncan's parents rather than M.W.'s parents, the State directs us to nothing to buttress this speculation. As stated in *Taylor*, "[m]ore is needed before the sanctity of one's home can be invaded by the government; it is not enough to simply conclude that contraband is in one's home merely because the suspect has a home." [19]

The only reference in the affidavit to Duncan's residence that was attributed to the informant is that he lived at the stated address. No factual allegations tie the described sexual activity or pictures to Duncan's residence. Viewed in its totality, the affidavit simply lacks allegations from which a resort to "common knowledge" might permit a reasonable inference that any particular picture or other items of child pornography were at Duncan's residence at the time the warrant was issued. Nothing in the affidavit supports the warrant's authorization to rummage freely through Duncan's home and computer files in search of material the informant never claimed existed. Reviewing the court's ruling de novo, I would view the evidence in the light most favorable to the trial court's ruling and hold that the trial court did not err in granting Duncan's motion to suppress.

---

**17.** 54 S.W.3d 21, 26 (Tex.App.-Amarillo 2001, no pet.).

**18.** *Id.*

**19.** *Id.* at 27.