COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 THE STATE OF TEXAS,
  
                                    
 Appellant,
  
 v.
  
 RUBEN GONZALEZ CANTU,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-11-00116-CR
  
                          Appeal from
  
 30th District Court
  
 of Wichita County,
 Texas
  
 (TC # 49,768-A)
 
 
 
 
  
  
 
 
  
  
 
 
  
  
 
 


                                                                  O
P I N I O N

 

            In this interlocutory appeal, the
State challenges a suppression order.  It
contends that the trial court erred by ignoring the reasonable inferences the
magistrate could have drawn from the facts in the search warrant affidavit, and
by improperly conducting a de novo
review rather than giving great deference to the magistrate’s determination of
probable cause.  We reverse and remand.

factual
and procedural BACKGROUND

            On October 30, 2009, a magistrate in
Wichita County issued a search warrant for Ruben Gonzalez Cantu’s residence.  The magistrate found probable cause to issue
the search warrant based on the facts contained in the supporting affidavit:  

1. There is in
Wichita County, Texas a suspected place and premises described and located as
follows: 1803 7th rear (lower)
apartment, white siding, front door faces north with a white awning overhang, a
window airconditioning unit is to the left of the door. 

 

2. Said
suspected place and premises are in charge of and controlled by each of the
following persons:  Ruben Cantu 08-07-79, Juanita Cantu 02-08-41

 

3. It is the
belief of the Affiant that a specific criminal offense has been committed, and
he hereby charges and accuses that: Ruben
Cantu is manufacturing counterfeit checks and identification to commit
Fraudulent Use or Possession of Identifying Information and Forgery. 

 

The affidavit
also stated that property and items constituting both evidence of the said
offense and evidence that Cantu committed the offense were at the suspected
place and premises and were concealed and kept in violation of the laws of
Texas.  Specifically, the affidavit
described the following “property and items concealed and kept”:

Computers, check
stock, ink, banking numbers, notes, electronic recording devices,
identification cards, and any other items that constitute evidence in identity
theft and forgery.

 

The affidavit
then set forth the following facts as probable cause: 

On October 27,
2009, a male suspect entered a business in Wichita Falls, TX on three different
occasions.  Each time, the suspect would
pass a check on the account of Ruben G. Cantu. 
A total of three check[s] were passed at the business.  The checks were found to be counterfeit
checks not authorized to be produced or passed by the suspect.  The account and bank routing numbers printed
on the checks are not issued to Ruben Cantu. 
Your affiant confirmed with the bank listed on the checks that the
checks were counterfeit.  Your affiant
confirmed with the account holder that the checks were not authorized to be
drawn from his account.  During all three
transactions Ruben Cantu used his Texas Identification Card to complete the
transactions.  On the third transaction,
the check was questioned by the victim business.  Ruben Cantu fled the business and left the
counterfeit check and his Texas Identification Card.  Ruben Cantu was identified on the business
security video as the person passing the counterfeit check.  Your affiant believes that Ruben Cantu is
using stolen identifying information and electronic equipment at his residence
to produce counterfeit documents to defraud local businesses and citizens.  Your affiant confirmed with the United States
Postal Inspection Service that Ruben Cantu is receiving mail at 1803 7th (rear
apartment).  Your affiant is requesting
that this warrant be served as a ‘no knock’ warrant based on the history of Ruben
Cantu and the ability of Ruben Cantu to quickly destroy electronic
evidence.  

 

            That same day, the search warrant
was executed and the items seized included checkbooks for Vaudene Barrington
and Brian Williams; a social security card belonging to Dalton Wayne Williams; a
birth certificate for Steven Allen Rodriguez; miscellaneous checks; professional
check writing software; multiple computers; and a printer.  

            Cantu was charged by indictment with
fraudulent use or possession of identifying information, a second-degree
felony.  The indictment charged that
Cantu, with the intent to harm or defraud another, and without the consent of
twenty-one named individuals, “possess[ed] more than ten (10) but less than
fifty (50) pieces of identifying information for the aforesaid named
individuals.”  The indictment also
contained an enhancement paragraph based on a prior felony conviction for
robbery.

            Subsequently, Cantu filed a motion
to suppress alleging the authorities had no legal basis for the search because
the four corners of the supporting affidavit failed to state sufficient
facts.  He claimed that the State
violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments
to the United States Constitution and Article I, Sections 9, 10, and 19 of the
Texas Constitution.  The motion also
alleged that the police department’s actions violated Article 38.23 of the
Texas Code of Criminal Procedure.

Probable
Cause and Search Warrant Affidavits

            Under
the Fourth Amendment to the United States Constitution, Article I, section 9 of
the Texas Constitution, and the Texas Code of Criminal Procedure, a search
warrant may only issue upon facts sufficient to satisfy the magistrate that
probable cause exists to believe the seizable items will be found if the search
is conducted.  See U.S.Const. amend. IV;
Tex.Const. art. 1, § 9; Tex.Code Crim.Proc.Ann. art.
18.01(b)(West 2005); see generally
Swearingen v. State, 143 S.W.3d 808, 810-11 (Tex.Crim.App. 2004).  Specifically,
the Fourth Amendment, made applicable to the States by the Due Process Clause
of the Fourteenth Amendment, provides: 

The
right of the people to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures, shall not be violated, and no
Warrants shall issue, but upon probable cause, supported by Oath or
affirmation, and particularly describing the place to be searched, and the
persons or things to be seized.

 

U.S. Const. amend. IV;
see Flores v. State, 319 S.W.3d 697,
702 (Tex.Crim.App. 2010).  The Texas
Constitution contains its own, similarly worded provision: 

The
people shall be secure in their persons, houses, papers and possessions, from
all unreasonable seizures or searches, and no warrant to search any place, or
to seize any person or thing, shall issue without describing them as near as
may be, nor without probable cause, supported by oath or affirmation.

 

Tex.Const. art.
1, § 9.  In addition, Article 18.01(b) of
the Texas Code of Criminal Procedure provides that a search warrant may be
obtained from a magistrate only after the submission of an affidavit setting
forth, “substantial facts establishing probable cause.”  Tex.Code
Crim.Proc. Ann. art. 18.01(b).  

            “The
cornerstone of the Fourth Amendment and its Texas equivalent is that a
magistrate shall not issue a search warrant without first finding ‘probable
cause’ that a particular item will be found in a particular location.”  Rodriguez
v. State, 232 S.W.3d 55, 60 (Tex.Crim.App. 2007).  Probable cause to support the issuance of a
search warrant exists where, in viewing the totality of the circumstances
presented in the affidavit, the facts submitted to the magistrate are sufficient
to establish that there is at least a “fair probability” or “substantial chance”
that contraband or evidence of a crime will be found at the specified
location.  Flores, 319 S.W.3d at 702, quoting
Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 2342 n.13,
76 L.Ed.2d 527 (1983)[internal quotations omitted]; Ramos v. State, 934 S.W.2d 358, 362-63 (Tex.Crim.App. 1996), cert. denied, 520 U.S. 1198, 117 S.Ct.
1556, 137 L.Ed.2d 704 (1997).  In making its determination, a magistrate is
permitted to interpret the affidavit in a non-technical, commonsense and
realistic manner and to draw reasonable inferences from the facts and
circumstances contained within its four corners.  Flores,
319 S.W.3d at 702; Gates, 462 U.S. at
235-238, 103 S.Ct. at 2333; Hankins v.
State, 132 S.W.3d 380, 388 (Tex.Crim.App. 2004).  The magistrate’s action “cannot be a mere
ratification of the bare conclusions of others.”  Gates,
462 U.S. at 239, 103 S.Ct. at 2333; Farhat
v. State, 337 S.W.3d 302, 306 (Tex.App.--Fort Worth 2011, pet. ref’d).  The affidavit must contain “sufficient
information” from which the issuing magistrate can determine probable
cause.  Gates, 462 U.S. at 239, 103 S.Ct. at 2333; Farhat, 337 S.W.3d at 306.

Standard of Review

            “The
duty of a reviewing court, including a reviewing trial court, is simply to
ensure that the magistrate had a substantial basis for concluding that probable
cause existed.”  Flores, 319 S.W.3d at 702,
citing Gates, 462 U.S. at 238-39, 103 S.Ct. at 2317 [internal quotations
omitted].  In determining whether
a probable cause affidavit sufficiently supports a search warrant, the trial
court examines the totality of the circumstances and gives great deference to
the magistrate’s decision to issue the warrant. 
Rodriguez, 232 S.W.3d at 59-60; Ramos, 934 S.W.2d at 362-63; see also
Emenhiser v. State, 196
S.W.3d 915, 924-25 (Tex.App.--Fort Worth 2006, pet. ref’d)(noting that when
reviewing a magistrate’s decision to issue a warrant, we apply a deferential
standard in keeping with the constitutional preference for a warrant).  When a
court reviews an issuing magistrate’s determination, the court should interpret
the affidavit in a commonsense and realistic manner, recognizing that the
magistrate may draw reasonable inferences.  See
Rodriguez, 232 S.W.3d at 61 (“When in doubt, we defer to all reasonable
inferences that the magistrate could have made.”); see also Davis v. State, 202 S.W.3d 149, 154 (Tex.Crim.App. 2006).  The rationale behind the rule
requiring a trial court to give great deference to a magistrate’s determination
that a warrant should issue was explained by the Supreme Court in Illinois v. Gates:

[The
process of determining probable cause] does not deal with hard certainties, but
with probabilities. Long before the law of probabilities was articulated as
such, practical people formulated certain common-sense conclusions about human
behavior; jurors as factfinders are permitted to do the same--and so are law
enforcement officers. Finally, the evidence thus collected must be seen and
weighed not in terms of library analysis by scholars, but as understood by
those versed in the field of law enforcement.

 

Gates, 462 U.S. at 231-32, 103 S.Ct. at
2328-29.  Additionally, the deference given to the magistrate’s
determination of probable cause “encourage[s] police officers to use the
warrant process rather than making a warrantless search and later attempting to
justify their actions by invoking some exception to the warrant requirement.”  Flores,
319 S.W.3d at 702 n.10, quoting Rodriguez,
232 S.W.3d at 59-60.

            Under this deferential standard, “the magistrate’s decision should carry the day
in doubtful or marginal cases, even if the reviewing court might reach a
different result upon de novo review.”  Flores, 319 S.W.3d at 702.  However, as the court noted in Flores, “[t]his ‘substantial basis’
standard of review ‘does not mean the reviewing court should be a rubber stamp’
. . . .”  Id.  In other words, “[a]
magistrate should not have to resort so much to inferences and ‘common sense’
conclusions that skirt the boundaries of what constitutes a substantial basis;
when too many inferences must be drawn, the result is a tenuous rather than a
substantial basis for the issuance of a warrant.  Farhat,
337 S.W.3d at 306, citing Davis, 202
S.W.3d at 157.  

            Accordingly,
we review the trial court’s decision de
novo, applying the same standard as the trial court.  State
v. Duncan, 72 S.W.3d 803, 806 (Tex.App.--Fort Worth, 2002, pet. ref’d).  In doing so, we are required, as was the
trial court, to afford great deference to the magistrate’s decision to issue
the warrant.  See id. (“[W]e are to
apply de novo the same standard of review required of the trial court. That
standard is consideration of the totality of the circumstances giving great deference
to the magistrate’s decision to determine whether the magistrate had a
substantial basis for concluding probable cause existed.”).  [Emphasis in original].  Therefore, although we review the trial court’s
probable cause determination de novo,
we are still required to view the affidavit with deference towards the
magistrate’s decision that there was probable cause to issue the warrant.  Id.
at 807, citing Wynn v. State, 996
S.W.2d 324, 327 (Tex.App.--Fort Worth 1999, no pet.).  In conducting our de novo review, we must “defer to the reasonable inferences made by
the magistrate in issuing the warrant, and to defer to the magistrate’s common
sense and realistic interpretation the affidavit.”  Duncan,
72 S.W.3d at 807, citing Lane v. State,
971 S.W.2d 748, 752 n.3 (Tex.App.--Dallas 1998, pet. ref’d). 

Substantial Basis For Concluding
That Probable Cause Existed 

 

            Looking to the four corners of the
affidavit, giving the magistrate’s decision to issue the warrant great
deference by deferring to the reasonable inferences from the facts expressly
articulated in the affidavit as well as the common sense and practical
interpretation of such facts, we find that, considering the totality of the
circumstances, a probability existed that the items seized would be found at
Cantu’s residence.  

            The affidavit requested a no-knock
search warrant for Cantu’s residence based in part on the affiant’s belief
that:  

Ruben Cantu is using
stolen identifying information and electronic equipment at his residence to produce
counterfeit documents to defraud local businesses and citizens.

 

The affidavit
stated that “a specific criminal offense has been committed,” and charged and
accused that Cantu, “is manufacturing counterfeit checks and identification to
commit Fraudulent Use or Possession of Identifying Information and Forgery.”  The affidavit listed specific items to be
seized.  While the conclusions of the
affiant are not, standing alone, sufficient to establish probable cause, the
affidavit also contained specific and detailed facts regarding the alleged
offense.  

            The affidavit stated that on October
27, 2009, Cantu entered a business in Wichita Falls, Texas on three separate
occasions.  On each of the three
occasions, Cantu passed a counterfeit check, “on the account of Ruben G. Cantu.”  Each of the counterfeit checks were printed
with Cantu’s name, but with account and bank routing numbers belonging to an
individual other than Cantu.  The affiant
confirmed with the drawer bank listed on the checks that the checks were
counterfeit.  He also confirmed with the
account holder that Cantu did not have permission to issue or pass checks on
his account.     The affidavit also stated that each time Cantu passed a
counterfeit check, he used his Texas Identification Card to complete the
transaction.  During the third
transaction, a business employee questioned Cantu about the account.  In response, Cantu fled the business and left
behind the third counterfeit check and his Texas Identification Card.  Not only did Cantu leave behind a counterfeit
check with his name and someone else’s account information, as well as his
Texas Identification card, Cantu “was identified on the business security video
as the person passing the counterfeit check.” 
Finally, the affiant stated that he confirmed with the United States
Postal Service that Cantu stated received mail at the address to be
searched.  

            These facts show that Cantu
possessed “identifying information,” i.e.
the bank account numbers and routing numbers of another individual, and
used this information to obtain funds without the consent or permission of the
account holder to possess the information or pass the checks.  Therefore, the magistrate could reasonably
infer that Cantu stole someone else’s account and bank routing
information.  Accordingly, we find that
in their totality, the allegations in the affidavit clearly set forth
sufficient facts to establish there was at least a fair probability or substantial
chance that a specific criminal offense had been committed.  See Tex.Code Crim.Proc.Ann. art. 18.01(c),(i).

            Under these facts, the affiant also provided
sufficient details evidencing that Cantu was tied to the counterfeiting scheme,
and that the items to be seized constitute evidence of the offense.  See Tex.Code Crim.Proc.Ann. art. 18.01(c)(2).  From the fact that Cantu cashed multiple
counterfeit checks with his name printed on them but with stolen account
information from another individual. the magistrate could reasonably infer that
Cantu was generating or manufacturing such counterfeit checks.  It is also reasonable to infer that in
manufacturing these counterfeit checks Cantu would need a “computer, check stock,
ink, and banking numbers.”  Moreover, it
is a reasonable inference that someone engaged in this type of criminal
activity would possess, “notes, electronic recording devices, identification
cards, and any other items that constitute evidence in identity theft and
forgery.”  

            In addition, the affidavit stated
that:  (1) date of the alleged incident
was October 27, 2009; (2) the supporting affidavit was filed three days later
on October 30, 2009; (3) the search warrant issued and executed the same day
the affidavit was filed; and (4) the affiant stated that he confirmed Cantu
received mail at the address to be searched. 
Based on the time frame, coupled with the fact that the affiant
confirmed Cantu received mail at the address to be searched, it is reasonable
to infer that Cantu currently resided there at the address.  See
State v. Cotter, 360 S.W.3d 647, 653 (Tex.App.--Amarillo 2012, no. pet.).  Therefore, we conclude that the magistrate
could have reasonably inferred there was at least a “fair probability” or a “substantial
chance” that the items to be seized would be found at Cantu’s residence.  See
Gates, 462 U.S. at 239, 103 S.Ct. at 2333; Cotter, 360 S.W.3d at 653, citing
State v. Moore, 2007 WL 4305374, at *5 (Tex.App.--Dallas Dec. 11, 2007,
pet. ref’d)(not designated for publication).

            Giving due deference to the
magistrate’s decision to issue the search warrant, and applying the applicable
law to the facts in this case, we conclude that the affidavit provided the
magistrate with probable cause necessary for the issuance of a search warrant
of appellant’s house.  See Gates, 462 U.S. at 236, 103 S.Ct. at
2331; Rodriguez, 232 S.W.3d at 59-60;
see also Duncan, 72 S.W.3d at
806.  Accordingly, we sustain the State’s
sole point.  The order of the trial court
is reversed and remanded.

 

July 31, 2012                                       ________________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)