COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-006-CR*
 
 
DAVID 
RUSSELL DUNCAN                                                           
APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                       
STATE
 
 
------------
 
FROM 
THE 158TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
 
        Appellant 
David Russell Duncan appeals his conviction for possession of child pornography. 
In his sole point on appeal, Duncan contends that the trial court erred by 
denying his motion to suppress because the allegations in the search warrant 
affidavit were insufficient to support a probable cause finding that child 
pornography would be found in his residence. We will affirm.
II. Procedural 
Background
        On 
September 28, 2000, Duncan was charged with the offenses of unlawful 
interception of electronic communications and four counts of possession of child 
pornography. On May 17, 2001, Duncan filed a motion to suppress evidence seized 
pursuant to a search warrant issued on July 10, 2000, and the trial court 
granted his motion. The State appealed to this court, contending that the trial 
court erred by granting Duncan’s motion because the allegations in the search 
warrant were sufficient to support a probable cause finding that child 
pornography would be found in Duncan’s residence. State v. Duncan, 
72 S.W.3d 803, 804 (Tex. App.—Fort Worth 2002, pet. dism’d). On appeal, 
looking solely to the four corners of the affidavit, deferring to the reasonable 
inferences that the magistrate could have made from the facts provided in the 
affidavit and to the magistrate’s common sense and practical interpretation of 
the affidavit, we held that “a substantial basis existed for the 
magistrate’s determination that child pornography and related items would 
probably be found in Duncan’s residence.” Id. at 808. Accordingly, we 
reversed the trial court’s order granting Duncan’s motion to suppress and 
remanded the cases for trial. Duncan then filed a petition for discretionary 
review, and the court of criminal appeals dismissed it as untimely.
        The 
cases were remanded to the trial court, and Duncan once again filed a motion to 
suppress evidence seized pursuant to the July 10 search warrant. On November 25, 
2002, the trial court denied this motion. Thereafter, Duncan pleaded guilty to 
the offense of possession of child pornography, and the trial court sentenced 
him to seven years’ imprisonment, probated for seven years, and imposed a 
$1,000 fine. The trial court granted Duncan permission to appeal its denial of 
his pretrial motion to suppress. This appeal followed.
        III. Law of the 
Case Doctrine
        On 
appeal, Duncan contends that the trial court erred by denying his motion to 
suppress because the allegations in the search warrant affidavit were 
insufficient to support a probable cause finding that child pornography would be 
found in Duncan’s residence. The State asserts that this court previously 
resolved this very issue in State v. Duncan, and that therefore, the law 
of the case doctrine governs the disposition of this appeal. See id. at 
804. We agree.
        The 
law of the case doctrine “provides that an appellate court’s resolution of a 
question of law in a previous appeal of the same case will govern the 
disposition of the same issue when raised in a subsequent appeal.” Howlett 
v. State, 994 S.W.2d 663, 666 (Tex. Crim. App. 1999). Law of the case is a 
court-made doctrine designed to promote judicial consistency and efficiency by 
eliminating the need for appellate courts to prepare opinions discussing 
previously resolved matters. Id. “The doctrine assures trial courts 
that they can rely on the appellate court’s disposition of an issue in 
presiding over the case and provides an incentive for trial courts to follow 
these decisions closely.” Id.
        However, 
the doctrine’s application is not inflexible. See Ex parte Granger, 850 
S.W.2d 513, 523 (Tex. Crim. App. 1993). An appellate court may reconsider its 
earlier disposition of a point of law if the court determines that there are 
“exceptional” circumstances that mitigate against relying on its prior 
decision. Id. Where the facts and issues are identical in a second 
appeal, the most common “exceptional” circumstance is that the earlier 
disposition appears to have been “clearly erroneous.” Id.
        In 
the instant case, Duncan’s sole point of error challenges the exact question 
of law that this court resolved in State v. Duncan: Whether the 
allegations in the search warrant affidavit sufficiently established probable 
cause to support the issuance of a warrant to search Duncan’s residence for 
child pornography. 72 S.W.3d at 804. In the first appeal, we determined that the 
same affidavit at issue in this appeal established “a probability . . . that 
child pornography would be found at Duncan’s residence.”  Id. at 
807.  Despite Duncan’s arguments, we are unpersuaded in this subsequent 
appeal that our previous decision was “clearly erroneous.” Therefore, 
because this court previously decided this issue adversely to Duncan in State 
v. Duncan, and because Duncan fails to demonstrate that our prior decision 
was “clearly erroneous,” we hold that the law of the case doctrine applies. 
Accordingly, we overrule Duncan’s sole point.
IV. Conclusion
        Having 
overruled Duncan’s sole point, we affirm the trial court’s judgment.
 
 
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
PANEL 
B:   CAYCE, C.J.; DAUPHINOT and WALKER, JJ.
 
DAUPHINOT, 
J. filed a dissenting opinion.
 
PUBLISH
 
DELIVERED: 
July 22, 2004


 
COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-006-CR
 
 
DAVID 
RUSSELL DUNCAN                                                      APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 158TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
DISSENTING OPINION
 
------------
        Because 
the majority fails to address issues raised by Appellant and not addressed in Duncan 
I,[1] I respectfully dissent.
        Appellant 
filed a pretrial motion to suppress the fruits of the search of the home where 
he lived with his parents. He argued that the affidavit supporting the warrant 
was defective in several respects. The trial judge agreed and granted the motion 
to suppress. The State filed an interlocutory appeal, and this court reversed, 
holding that the magistrate who signed the warrant could infer those matters 
missing from the affidavit, such as the existence of an “‘elaborate set up 
for videotaping and photographing’ people,” its location, the existence of 
“records of this intimate activity,” the locations of these “records,” 
the existence of photographs and videotapes, their location, and the situs of 
the sexual activity.[2]
        On 
remand, the trial court heard further argument and evidence on Appellant’s 
motion to suppress and also conducted a Franks hearing.[3]  
Obviously, because the trial court granted the motion to suppress at the 
original hearing before remand, Appellant did not insist on offering additional 
evidence at that original hearing. Because Appellant lost on the State’s 
interlocutory appeal, however, Appellant had every incentive to offer new 
evidence and argument on remand, just as the State would in a case remanded from 
this court for factual insufficiency.
        Chief 
Mike Shackleford, the affiant, testified at the Franks hearing. Viewing 
his testimony in the kindest and most generous light, his affidavit contains 
falsehoods exhibiting at best a reckless disregard for the truth. Yet the 
majority neither mentions nor addresses the new evidence, although the “law of 
the case” doctrine applies only when there is no change in the evidence 
surrounding the search.[4]  Nor does the 
majority consider the sufficiency of the affidavit after the admitted falsehoods 
are removed from the affidavit as required.[5]
        The 
Texas Court of Criminal Appeals instructs us that
 
[w]hen 
a challenge is made as to whether a search warrant affidavit is legally 
sufficient to show probable cause, the trial court is limited to the "four 
corners" of the affidavit.  See Gaston v. State, 440 S.W.2d 
297, 302 (Tex. Crim. App. 1969).  This is entirely different from a 
challenge to the truthfulness of a warrant affidavit and whether the affiant 
made knowing misrepresentations to establish probable cause.  When the 
defendant challenges the warrant affidavit on the ground that it contains known 
falsehoods, as is the case here, the trial court is not limited to the 
"four corners" of the affidavit.  See generally, George E. Dix & Robert O. Dawson, Texas 
Practice: Criminal Practice and Procedure §§ 6.36-6.43 (2d ed. 2001).  
Limiting a falsity challenge to the four corners of the warrant affidavit 
negates the underlying challenge and raises serious due process concerns.  See 
Franks[, 438 U.S. at 156, 98 S. Ct. at 2676] (stating that "if the 
allegedly false statement is necessary to the finding of probable cause, the 
Fourth Amendment requires that a hearing be held at the defendant's 
request") (emphasis added).  Thus, if a defendant has made a 
substantial preliminary showing of deliberate falsity, the trial court is 
required to go behind the "four corners" of the affidavit in a Franks 
evidentiary hearing.[6]
 
 
        The 
Cates court, which reversed both the trial court and the intermediate 
appellate court, dealt with a trial court’s limiting the defendant’s proof 
at the suppression hearing to the four corners of the affidavit. The case now 
before this court is in a slightly different posture. Here, the trial court 
understood the due process requirements of a Franks hearing. The majority 
opinion does not reflect such an understanding. In fairness to the majority, 
Appellant does not specifically refer to Franks, nor is it clear that 
Appellant realized that the trial court had granted him a Franks hearing. 
But if, as the majority urges us to do, we apply a “common sense approach,” 
a review of the record reveals that Appellant satisfied all of the elements 
required by Franks.[7] Subsection h of 
Appellant’s motion states,
 
The 
search warrant was illegally issued because the issuing magistrate was misled by 
information in the affidavit that the affiant officer knew was false or would 
have known was false except for his reckless disregard for the truth. The 
premises described in the warrant are under the exclusive control of Dan and 
Jeannette Duncan. A cursory search of the mortgage or utility or postal records 
could have easily established this, but the Affiant chose not to make this 
effort.

 
Yet 
the majority denies Appellant review on appeal not only of the Franks 
issues but also the new issues raised in the trial court after remand.  
Never does the majority address the complaints of lack of particularity, 
staleness, unreliability, bias of the magistrate, or many of Appellant’s other 
new complaints.
        Appellant 
points out that the affiant Shackleford had no personal knowledge of the matters 
necessary to establish probable cause. Shackleford’s information was based 
exclusively on the statement made by Megan Winton, Appellant’s former 
girlfriend, on July 6, 2000. Although Shackleford swore Winton said her date of 
birth was June 3, 1984, the affidavit does not indicate any confirmation of this 
fact. An essential element of the offense of possession of child pornography is 
that the visual material depict a child younger than 18 years of age at the time 
the image of the child was made.[8]  There is no 
corroboration of Winton’s identity or that the “Megan” referred to in the 
affidavit is Megan Winton.
        There 
is no corroboration of the averment that the premises to be searched were in 
charge of and controlled by Appellant. Indeed, the premises were not under 
Appellant’s control. Appellant was a high school student at the time, and he 
lived with his parents, who were in charge of and controlled the home 
Shackleford sought to search. Either Shackleford knew Appellant was a high 
school student living with his parents and intentionally lied to the magistrate, 
or he showed a reckless disregard for the truth he swore to. It would have been 
a simple matter to verify who lived in and controlled the home, but Shackleford 
did not, nor did he even corroborate his statement that Appellant lived at the 
address listed in the affidavit.[9]
        Nowhere 
in the affidavit does Shackleford claim that “Megan” had ever been to the 
home he sought to search. Consequently, nowhere in the affidavit is there any 
claim that anyone had recent knowledge that the laundry list of items he was 
authorized to seize even existed, much less that they existed inside the home he 
sought to search.[10]
        Appellant 
points out that the affiant Shackleford swore that “Affiant stated that she 
has had a sexual relationship with” with Appellant, and that the affiant had 
broken off the relationship. Appellant also points out that the gender of the 
affiant is not absolutely established in this portion of the affidavit, although 
the pronoun “she” refers back to the affiant. The “she” referred to in 
the affidavit claimed that Appellant had told her that he had videotape and 
photographs of her and Appellant engaged in sexual relations.
        Putting 
the best face on these allegations, this affidavit is merely a case of sloppy 
drafting, but there is no room for sloppy drafting when seeking to invade the 
sanctity of someone’s home. That an unbiased magistrate could have signed the 
warrant based on this affidavit raises grave concerns about the Fourth Amendment 
protections afforded Appellant.[11]
        The 
remainder of the affidavit reports the affiant Shackleford’s suspicions that 
sophisticated photographic and computer equipment must exist, “[b]ased upon 
the above information obtained from interviewing Megan.” Based upon nothing at 
all, Shackleford swears at the beginning of his affidavit that located in the 
“suspected place and premises” are child pornography, diaries, computer 
services bills or records, telephone or address books or any records of any kind 
of possible child sexual partners or traders and sellers of child pornography, 
camera equipment, correspondence, computers and computer-related equipment, 
videocassette tapes that may have been used to store child pornography or child 
erotica, “intelligence materials,” and any items that may help identify 
child victims of sexual exploitation.
        Nowhere 
in the affidavit does Shackleford set forth any basis for this belief, the name 
of any person who has seen these objects, any time frame for the existence of 
these items in this home, or any basis for reliability of any informant. Nowhere 
is there evidence that the magistrate was an attorney or a judge of a court of 
record, although certain of the items sought are mere evidence, and their 
seizure is therefore controlled by Article 18.01 of the Texas Code of Criminal 
Procedure.[12]
        This 
affidavit, at best, reaffirms the dangers of using form affidavits. At worst, it 
is an intentional attempt to mislead the magistrate by presenting Appellant as a 
grown man who fixates on children as sexual objects, exchanges child pornography 
with other sexual deviants, and stalks child victims. In reality, Appellant and 
Winton were high school sweethearts who broke up. Winton claimed that Appellant 
had threatened to embarrass her before she contacted the police. Shackleford was 
well aware that the age difference between Appellant and Winton was less than 
three years.
        At 
the hearing on Appellant’s motion to suppress after remand, Shackleford 
admitted that his affidavit contained no indication of any basis to believe that 
there were diaries or other records of child sexual partners or computer online 
and internet access service bills or other records. He admitted that “Megan” 
never told him she saw a camera, and he could not remember whether she ever said 
there was a video camera. Appellant was not allowed to ask, “Based on the 
affidavit, Chief Shackleford, there was no information to believe that anyone 
had ever seen a camera or video or motion picture camera; is that correct?” 
Shackleford also admitted that there was no evidence of any sort that anyone 
ever saw computers or computer-related equipment at the home.[13]
        There 
are two standards at play in the appropriate analysis of this affidavit. In 
determining whether probable cause exists to issue the warrant, we are limited 
to the four corners of the affidavit, as was the issuing magistrate.[14]  “‘Suspicion and conjecture do not constitute 
probable cause, and the facts as recited in the affidavit in this cause evidence 
nothing more than mere suspicion.’”[15]  
Additionally, while possession of child pornography is a current offense, the 
alleged threat to publish that compelled Megan to contact the police was a 
different, future offense.  A future offense is one that has not yet 
occurred.
        The 
second standard is that applied to a Franks challenge to the warrant.[16] In this inquiry we go behind the four corners of the 
affidavit.[17]  When a police affiant makes 
statements in a search warrant affidavit that are intentionally false or made 
with reckless disregard for the truth, the statements must be excised from the 
affidavit before determining whether the affidavit affords probable cause for 
the issuance of the warrant.[18]
        Applying 
the appropriate standards, we have before us an inadequate, conclusory affidavit 
based on wholly uncorroborated suspicion of possible current and future offenses 
resulting in a warrant that was evidentiary in part and issued by an unnamed 
magistrate who failed to set out the basis of that magistrate’s authority and 
who failed to designate a definite place for the return of the items seized. The 
basis for this affidavit? A report that two high school sweethearts had broken 
up. One threatened to embarrass the other by posting on the internet pictures of 
the two of them engaged in sexual activity. The other went to the police.
        Based 
on the reasoning presented above as well as in my dissent from Duncan I,[19]  which I adopt, incorporate for all purposes, and 
append here, I respectfully dissent.
  
  
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
 
 
PUBLISH
 

 
 
 
APPENDIX TO DISSENTING OPINION
 
 
 
 
COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NOS. 2-01-293-CR
    
                                                 2-01-294-CR
 
 
THE 
STATE OF TEXAS                                                           APPELLANT
 
V.
 
DAVID 
RUSSELL DUNCAN                                                        APPELLEE
  
    
------------
 
FROM 
THE 158TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
DISSENTING OPINION
 
------------
        I 
respectfully dissent to the majority’s holding that the trial court erred in 
granting Duncan’s motion to suppress. The majority reasons that the 
allegations in the search warrant affidavit were sufficient to justify the 
magistrate’s conclusion that child pornography would probably be found in 
Duncan’s residence.
        The 
majority is correct in stating that we review a trial court’s ruling on a 
motion to suppress under a bifurcated standard of review by giving almost total 
deference to the court’s determination of historical facts and reviewing de 
novo the court’s application of the law of search and seizure.[1]  The analysis, however, does not end there. Where 
the trial court does not make explicit findings of historical fact, we review 
the evidence in the light most favorable to the trial court’s ruling.[2]  That is, we assume the trial court made implicit 
findings of fact supported in the record that buttress its conclusion.[3]  If the trial court’s decision is correct on any 
theory of law applicable to the case, it must be sustained.[4]
        A 
search warrant must be based upon probable cause.[5]  
Probable cause sufficient to support the issuance of a search warrant exists 
where the facts contained within the four corners of the affidavit and the 
reasonable inferences drawn therefrom justify the magistrate’s conclusion that 
the property that is the object of the search is probably on the premises to be 
searched at the time the warrant issues.[6]  
The affidavit must recite facts and circumstances within the affiant’s 
knowledge and of which the affiant has reasonably trustworthy information 
sufficient to warrant a reasonably cautious person’s belief that the offense 
has been committed and the evidence to be seized is at the particular place to 
be searched.[7]  In evaluating whether probable 
cause existed for the issuance of a warrant, appellate courts must assess the 
totality of the circumstances presented.[8]
        The 
State contends that the trial court erred in granting the motion to suppress 
because the allegations in the search warrant, in their totality, were 
sufficient to support a probable cause finding that child pornography would be 
found in Duncan’s residence at the time the warrant was issued. The State 
argues that the reliability of the affiant and his sources of information are 
part of the “totality of the circumstances” that the magistrate should 
evaluate in making a probable cause determination and that the magistrate in 
this case was entitled to rely on the statements of the sixteen-year-old girl 
and the officer. While we recognize that a named citizen who is in a position to 
supply information by virtue of having been a crime victim or witness has an 
inherent reliability not attributed to police informants,[9] 
the information in an affidavit in support of a search warrant must nevertheless 
be complete and specific enough to constitute probable cause to search a 
particular place.[10]
        In 
this case, the facts set forth within the four corners of the affidavit did not 
support a reasonable belief that the object of the search, child pornography, 
was probably at Duncan’s residence at the time the warrant was issued. The 
affidavit does not quote Megan Winton as saying that she and Duncan had sexual 
relations at his parents’ residence or that Duncan had told her that he had 
any photograph, videotape, or computer file of child pornography at that 
residence. Although the majority correctly states that the magistrate is 
permitted to draw reasonable inferences from information contained within the 
four corners of the affidavit, we cannot read into the affidavit information not 
gleaned from within the affidavit itself. As the court of criminal appeals has 
noted:
 
It 
is one thing to draw reasonable inferences from information clearly set forth 
within the four corners of an affidavit.  Thus, for example, it is 
sometimes permissible to presume reliability of an informant by virtue of the 
detailed nature of the information he supplies.  It is quite another matter 
to read material information into an affidavit that does not otherwise appear on 
its face.  We cannot, in the interest of a commonsense and realistic 
approach to interpretation of affidavits, “infer” a connection between 
informant’s observation of appellant with contraband, and the residence at 724 
Del Mar Street.[11]
 
        As 
in Cassias, “[t]he assertion that the ‘premises are in the possession 
and under the control of’ appellant is not attributed to the informant. In 
fact, it is purely a conclusory statement, the source of which is not given nor 
the reliability vouched for.”[12] A purely 
conclusory statement will not support the issuance of a warrant because it does 
not provide facts from which a neutral magistrate may make the necessary 
findings.[13]
        In 
Wachter v. State, the San Antonio Court of Appeals concluded that 
probable cause existed to support the issuance of a warrant to search for a 
runaway child, child pornography videos, and controlled substances.[14] In Wachter, allegations that the suspect was 
harboring a runaway were combined with his record involving child sexual assault 
and claims of his possession of videotapes of young women, demonstrating a 
continuing pattern of behavior. In addition, the affidavit in Wachter contained 
the allegation that a runaway and suggestive materials were seen at the 
suspect’s residence within twenty-four hours of the warrant’s issuance.[15]  In the case now before us, however, the 
affidavit contains no allegations of contraband having been seen at Duncan’s 
residence.  Indeed, Megan never claimed to have seen any photographic 
depiction of her engaging in intercourse with Appellant.
        The 
State submits that what the affidavit lacks in this case can easily be provided 
through reasonable inferences based upon common knowledge and experience.  
The State thus argues that it is highly unlikely that the sexual activity 
described in the affidavit, which the State erroneously describes as 
“illegal,”[16] would have taken place in 
Megan’s home rather than Duncan’s home and that it makes sense that a person 
would keep the records of this intimate activity in his home.  The State 
further argues that it was not unreasonable for both the affiant and the 
magistrate to infer that Duncan had a computer in his home that probably 
contained evidence of child pornography. There are no allegations in the 
affidavit, however, from which any such inferences may be drawn. Nor does the 
affidavit contain any information from which a magistrate could draw the 
inference that the sexual activity could have occurred in only two possible 
places, Duncan’s family’s home or Megan’s. Indeed, the State does not 
explain in its brief why it is more reasonable to speculate that the sexual 
activity between the two teenagers would have taken place in Duncan’s home 
rather than in Megan’s home, a friend’s home, a motel, or even in the 
backseat of an automobile or the bed of a pickup truck.
        In 
Taylor v. State, the Amarillo Court of Appeals recognized that general 
information in an affidavit about a pedophile’s propensity to collect child 
pornography and maintain the collection at his home provided a basis to 
reasonably infer that contraband could probably be found in a suspect’s home.[17]  The Taylor court concluded, however, that 
the sending of one image over the Internet would not qualify the suspect as a 
pedophile where there was an absence of evidence that he collected child 
pornography or had an interest in it, and the magistrate could not have 
reasonably concluded that, like a pedophile, the suspect would maintain 
pornography at his residence.[18]
        In 
this case, the affidavit contains no information that eighteen-year-old Duncan, 
who is nowhere described in the affidavit, is a pedophile or has a pedophile’s 
propensities. Moreover, the allegations concerning Duncan’s sexual 
relationship with the sixteen-year-old informant, his possession of a videotape 
and photographs of them having sexual relations, and his statements that he 
would put the pictures on the Internet do not establish him as a pedophile who 
probably maintains pornography at his residence. Even if, as the State and the 
majority urge, we may speculate that the two teenagers would prefer to risk 
discovery by Duncan’s parents rather than Megan’s parents, the State directs 
us to nothing to buttress this speculation. As stated in Taylor, 
“[m]ore is needed before the sanctity of one’s home can be invaded by the 
government; it is not enough to simply conclude that contraband is in one’s 
home merely because the suspect has a home.”[19]
        The 
only reference in the affidavit to Duncan’s residence that was attributed to 
the informant is that he lived at the stated address. No factual allegations tie 
the described sexual activity or pictures to Duncan’s residence. Viewed in its 
totality, the affidavit simply lacks allegations from which a resort to 
“common knowledge” might permit a reasonable inference that any particular 
picture or other items of child pornography were at Duncan’s residence at the 
time the warrant was issued. Nothing in the affidavit supports the warrant’s 
authorization to rummage freely through Duncan’s home and computer files in 
search of material the informant never claimed existed. Reviewing the court’s 
ruling de novo, I would view the evidence in the light most favorable to the 
trial court’s ruling and hold that the trial court did not err in granting 
Duncan’s motion to suppress.
 
 
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
 
 
                PUBLISH
[DELIVERED 
MARCH 28, 2002]
 
********************************************************
        END OF APPENDIX FOR 2-03-006-CR

NOTES
*  Majority opinion by Justice Walker; Dissenting Opinion by 
Justice Dauphinot
DISSENTING OPINION NOTES
1.  
State v. Duncan, 72 S.W.3d 803 (Tex. App.—Fort Worth 2002, pet. 
dism’d, untimely filed).
2.  
Id. at 807-08.
3.  
Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674 (1978).
4.  
See Bell v. State, 938 S.W.2d 35, 42-43 (Tex. Crim. App. 1996) 
(recognizing that the “law of the case” doctrine does not apply to 
evidentiary sufficiency challenges), cert. denied, 522 U.S. 827 (1997) 
(citing Alexander v. State, 866 S.W.2d 1, 2-3 (Tex. Crim. App. 1993), cert. 
denied, 511 U.S. 1100 (1994)); Hudson v. Wakefield, 711 S.W.2d 628, 
630 (Tex. 1986) (“Thus, when in the second trial or proceeding, one or both of 
the parties amend their pleadings, it may be that the issues or facts have 
sufficiently changed so that the law of the case no longer applies.”); Ex 
parte Calvin, 689 S.W.2d 460, 463 (Tex. Crim. App. 1985) (citing 6 Tex. Jur. 3d, Appellate Review § 
908 (1980)); Rose v. Baker, 143 Tex. 202, 183 S.W.2d 438, 442 (1944).
5.  
See Franks, 438 U.S. at 156, 98 S. Ct. at 2676; Janecka v. State, 
937 S.W.2d 456, 462 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 825 
(1997); Davis v. State, 2-02-149-CR, 2004 WL 1353257, at *6, *9 (Tex. 
App.—Fort Worth June 17, 2004, no pet. h.) (holding that when the false 
statements are removed from the officer’s affidavit, there remains no probable 
cause to support the warrant).
6.  
Cates v. State, 120 S.W.3d 352, 359 n.3 (Tex. Crim. App. 2003).
7.  
438 U.S. at 156, 98 S. Ct. at 2676; Cates, 120 S.W.3d at 357-59.
8.  
Tex. Penal Code Ann. § 
43.26(a)(1) (Vernon 2003).
9.  
See Davis, 2004 WL 1353257, at *8 (“While Officer Wallace might not 
have actually known this information was inaccurate, he knew that he 
had not verified this information despite swearing otherwise and that the 
preliminary information on these two people had come from a new informant. This 
failure to verify shows that Officer Wallace could have known and should have 
known of the falsity of the information and that he failed to verify the 
information with reckless disregard for its truth or accuracy.”).
10.  
See Long v. State, 132 S.W.3d 443, 447 (Tex. Crim. App. 2004).
11.  
See id. at 448 (“‘Obedience to the particularity requirement both in 
drafting and executing a search warrant is therefore essential to protect 
against the centuries-old fear of general searches and seizures.’”) (quoting 
United States v. Heldt, 668 F.2d 1238, 1257 (D.C. Cir. 1981), cert 
denied, 456 U.S. 926 (1982)).
12.  
Tex. Code Crim. Proc. Ann. art. 
18.01(c) (Vernon Supp. 2004).
13.  
See Long, 132 S.W.3d at 448.
14.  
Cates, 120 S.W.3d at 355 n.3; Jones v. State, 833 S.W.2d 118, 123 
(Tex. Crim. App. 1992), cert. denied, 507 U.S. 921 (1993); Davis, 
2004 WL 1353257, at *1.
15.  
Hass v. State, 790 S.W.2d 609, 612 (Tex. Crim. App. 1990) (quoting Tolentino 
v. State, 638 S.W.2d 499, 502 (Tex. Crim. App. 1982).
16.  
Cates,120 S.W.3d at 357-59.
17.  
Id. at 359 n.3.
18.  
See Franks, 438 U.S. at 156, 98 S. Ct. at 2676; Janecka, 937 
S.W.2d at 462.
19.  
72 S.W.3d at 808-11 (Dauphinot, J., dissenting).


NOTES FROM APPENDIX TO DISSENTING OPINION

1.  
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).
2.  
Id. at 327-28.
3.  
Id. at 328.
4.  
State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).
5.  
Wynn v. State, 996 S.W.2d 324, 326 (Tex. App.—Fort Worth 1999, no pet.) 
(citing U.S. Const. amend. IV; Tex. Const. art. I, § 9).
6.  
Id.
7.  
Id.
8.  
Id. (citing Illinois v. Gates, 462 U.S. 213, 238-39, 103 S. Ct. 
2317, 2332-33 (1983)).
9.  
See Lopez v. State, 535 S.W.2d 643, 648 (Tex. Crim. App. 1976).
10.  See generally 2 Wayne R. LaFave, Search and Seizure § 
3.4(c) (3d ed. 1996).
11.  Cassias v. State, 719 S.W.2d 585, 590 (Tex. 
Crim. App. 1986) (op. on reh'g) (citation omitted).
12.  Id. at 588 n.2.
13.  Id. at 590.
14.  961 S.W.2d 598, 602 (Tex. App.—San Antonio 1997, 
pet. ref’d).
15.  Id.
16.  See Tex. 
Penal Code Ann. § 22.011(e)(1) (Vernon Supp. 2002) (providing that it is 
an affirmative defense to prosecution under subsection (a)(2) of section 22.011 
that the actor was not more than three years older than the victim).
17.  54 S.W.3d 21, 26 (Tex. App.—Amarillo 2001, no pet.).
18.  Id.
19.  Id. at 27.