COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| THE STATE OF TEXAS, | | No. 08-11-00116-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 30th District Court |
| | § | |
| RUBEN GONZALEZ CANTU, | | of Wichita County, Texas |
| | § | |
| Appellee. | § | (TC # 49,768-A) |

**O P I N I O N**

In this interlocutory appeal, the State challenges a suppression order. It contends that the trial court erred by ignoring the reasonable inferences the magistrate could have drawn from the facts in the search warrant affidavit, and by improperly conducting a *de novo* review rather than giving great deference to the magistrate's determination of probable cause. We reverse and remand.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 30, 2009, a magistrate in Wichita County issued a search warrant for Ruben Gonzalez Cantu's residence. The magistrate found probable cause to issue the search warrant based on the facts contained in the supporting affidavit:

1. There is in Wichita County, Texas a suspected place and premises described and located as follows: **1803 7th rear (lower) apartment, white siding, front door faces north with a white awning overhang, a window airconditioning unit is to the left of the door.**

2. Said suspected place and premises are in charge of and controlled by each of the following persons: **Ruben Cantu 08-07-79, Juanita Cantu 02-08-41**

3. It is the belief of the Affiant that a specific criminal offense has been committed, and he hereby charges and accuses that: **Ruben Cantu is**

**manufacturing counterfeit checks and identification to commit Fraudulent Use or Possession of Identifying Information and Forgery.**

The affidavit also stated that property and items constituting both evidence of the said offense and evidence that Cantu committed the offense were at the suspected place and premises and were concealed and kept in violation of the laws of Texas. Specifically, the affidavit described the following "property and items concealed and kept":

> Computers, check stock, ink, banking numbers, notes, electronic recording devices, identification cards, and any other items that constitute evidence in identity theft and forgery.

The affidavit then set forth the following facts as probable cause:

> On October 27, 2009, a male suspect entered a business in Wichita Falls, TX on three different occasions. Each time, the suspect would pass a check on the account of Ruben G. Cantu. A total of three check[s] were passed at the business. The checks were found to be counterfeit checks not authorized to be produced or passed by the suspect. The account and bank routing numbers printed on the checks are not issued to Ruben Cantu. Your affiant confirmed with the bank listed on the checks that the checks were counterfeit. Your affiant confirmed with the account holder that the checks were not authorized to be drawn from his account. During all three transactions Ruben Cantu used his Texas Identification Card to complete the transactions. On the third transaction, the check was questioned by the victim business. Ruben Cantu fled the business and left the counterfeit check and his Texas Identification Card. Ruben Cantu was identified on the business security video as the person passing the counterfeit check. Your affiant believes that Ruben Cantu is using stolen identifying information and electronic equipment at his residence to produce counterfeit documents to defraud local businesses and citizens. Your affiant confirmed with the United States Postal Inspection Service that Ruben Cantu is receiving mail at 1803 7th (rear apartment). Your affiant is requesting that this warrant be served as a 'no knock' warrant based on the history of Ruben Cantu and the ability of Ruben Cantu to quickly destroy electronic evidence.

That same day, the search warrant was executed and the items seized included checkbooks for Vaudene Barrington and Brian Williams; a social security card belonging to Dalton Wayne Williams; a birth certificate for Steven Allen Rodriguez; miscellaneous checks; professional check writing software; multiple computers; and a printer.

- 2 -

Cantu was charged by indictment with fraudulent use or possession of identifying information, a second-degree felony. The indictment charged that Cantu, with the intent to harm or defraud another, and without the consent of twenty-one named individuals, "possess[ed] more than ten (10) but less than fifty (50) pieces of identifying information for the aforesaid named individuals." The indictment also contained an enhancement paragraph based on a prior felony conviction for robbery.

Subsequently, Cantu filed a motion to suppress alleging the authorities had no legal basis for the search because the four corners of the supporting affidavit failed to state sufficient facts. He claimed that the State violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 19 of the Texas Constitution. The motion also alleged that the police department's actions violated Article 38.23 of the Texas Code of Criminal Procedure.

**PROBABLE CAUSE AND SEARCH WARRANT AFFIDAVITS**

Under the Fourth Amendment to the United States Constitution, Article I, section 9 of the Texas Constitution, and the Texas Code of Criminal Procedure, a search warrant may only issue upon facts sufficient to satisfy the magistrate that probable cause exists to believe the seizable items will be found if the search is conducted. *See* U.S.CONST. amend. IV; TEX.CONST. art. 1, § 9; TEX.CODE CRIM.PROC.ANN. art. 18.01(b)(West 2005); s*ee generally Swearingen v. State*, 143 S.W.3d 808, 810-11 (Tex.Crim.App. 2004). Specifically, the Fourth Amendment, made applicable to the States by the Due Process Clause of the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV; *see Flores v. State*, 319 S.W.3d 697, 702 (Tex.Crim.App. 2010). The Texas Constitution contains its own, similarly worded provision:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX.CONST. art. 1, § 9. In addition, Article 18.01(b) of the Texas Code of Criminal Procedure provides that a search warrant may be obtained from a magistrate only after the submission of an affidavit setting forth, "substantial facts establishing probable cause." TEX.CODE CRIM.PROC. ANN. art. 18.01(b).

"The cornerstone of the Fourth Amendment and its Texas equivalent is that a magistrate shall not issue a search warrant without first finding 'probable cause' that a particular item will be found in a particular location." *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex.Crim.App. 2007). Probable cause to support the issuance of a search warrant exists where, in viewing the totality of the circumstances presented in the affidavit, the facts submitted to the magistrate are sufficient to establish that there is at least a "fair probability" or "substantial chance" that contraband or evidence of a crime will be found at the specified location. *Flores*, 319 S.W.3d at 702, *quoting Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 2342 n.13, 76 L.Ed.2d 527 (1983)[internal quotations omitted]; *Ramos v. State*, 934 S.W.2d 358, 362-63 (Tex.Crim.App. 1996), *cert. denied*, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997). In making its determination, a magistrate is permitted to interpret the affidavit in a non-technical, commonsense and realistic manner and to draw reasonable inferences from the facts and circumstances contained within its four corners. *Flores*, 319 S.W.3d at 702; *Gates*, 462 U.S. at

235-238, 103 S.Ct. at 2333; *Hankins v. State*, 132 S.W.3d 380, 388 (Tex.Crim.App. 2004). The magistrate's action "cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239, 103 S.Ct. at 2333; *Farhat v. State*, 337 S.W.3d 302, 306 (Tex.App.--Fort Worth 2011, pet. ref'd). The affidavit must contain "sufficient information" from which the issuing magistrate can determine probable cause. *Gates*, 462 U.S. at 239, 103 S.Ct. at 2333; *Farhat*, 337 S.W.3d at 306.

### STANDARD OF REVIEW

"The duty of a reviewing court, including a reviewing trial court, is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Flores*, 319 S.W.3d at 702*, citing Gates*, 462 U.S. at 238-39, 103 S.Ct. at 2317 [internal quotations omitted]. In determining whether a probable cause affidavit sufficiently supports a search warrant, the trial court examines the totality of the circumstances and gives great deference to the magistrate's decision to issue the warrant. *Rodriguez*, 232 S.W.3d at 59-60; *Ramos*, 934 S.W.2d at 362-63; *see also Emenhiser v. State,* 196 S.W.3d 915, 924-25 (Tex.App.--Fort Worth 2006, pet. ref'd)(noting that when reviewing a magistrate's decision to issue a warrant, we apply a deferential standard in keeping with the constitutional preference for a warrant). When a court reviews an issuing magistrate's determination, the court should interpret the affidavit in a commonsense and realistic manner, recognizing that the magistrate may draw reasonable inferences. *See Rodriguez*, 232 S.W.3d at 61 ("When in doubt, we defer to all reasonable inferences that the magistrate could have made."); *see also Davis v. State*, 202 S.W.3d 149, 154 (Tex.Crim.App. 2006). The rationale behind the rule requiring a trial court to give great deference to a magistrate's determination that a warrant should issue was explained by the Supreme Court in *Illinois v. Gates*:

[The process of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Gates*, 462 U.S. at 231-32, 103 S.Ct. at 2328-29. Additionally, the deference given to the magistrate's determination of probable cause "encourage[s] police officers to use the warrant process rather than making a warrantless search and later attempting to justify their actions by invoking some exception to the warrant requirement." *Flores*, 319 S.W.3d at 702 n.10, *quoting Rodriguez*, 232 S.W.3d at 59-60.

Under this deferential standard, "the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review." *Flores*, 319 S.W.3d at 702. However, as the court noted in *Flores*, "[t]his 'substantial basis' standard of review 'does not mean the reviewing court should be a rubber stamp' . . . ." *Id.* In other words, "[a] magistrate should not have to resort so much to inferences and 'common sense' conclusions that skirt the boundaries of what constitutes a substantial basis; when too many inferences must be drawn, the result is a tenuous rather than a substantial basis for the issuance of a warrant. *Farhat*, 337 S.W.3d at 306, *citing Davis*, 202 S.W.3d at 157.

Accordingly, we review the trial court's decision *de novo*, applying the same standard as the trial court. *State v. Duncan*, 72 S.W.3d 803, 806 (Tex.App.--Fort Worth, 2002, pet. ref'd). In doing so, we are required, as was the trial court, to afford great deference to the magistrate's decision to issue the warrant. *See id.* ("[W]e are to apply de novo the same standard of review required of the trial court. That standard is consideration of the totality of the circumstances *giving great deference to the magistrate's decision* to determine whether the magistrate had a

substantial basis for concluding probable cause existed."). [Emphasis in original]. Therefore, although we review the trial court's probable cause determination *de novo*, we are still required to view the affidavit with deference towards the magistrate's decision that there was probable cause to issue the warrant. *Id*. at 807*, citing Wynn v. State*, 996 S.W.2d 324, 327 (Tex.App.-- Fort Worth 1999, no pet.). In conducting our *de novo* review, we must "defer to the reasonable inferences made by the magistrate in issuing the warrant, and to defer to the magistrate's common sense and realistic interpretation the affidavit." *Duncan*, 72 S.W.3d at 807, *citing Lane v. State*, 971 S.W.2d 748, 752 n.3 (Tex.App.--Dallas 1998, pet. ref'd).

### SUBSTANTIAL BASIS FOR CONCLUDING THAT PROBABLE CAUSE EXISTED

Looking to the four corners of the affidavit, giving the magistrate's decision to issue the warrant great deference by deferring to the reasonable inferences from the facts expressly articulated in the affidavit as well as the common sense and practical interpretation of such facts, we find that, considering the totality of the circumstances, a probability existed that the items seized would be found at Cantu's residence.

The affidavit requested a no-knock search warrant for Cantu's residence based in part on the affiant's belief that:

> Ruben Cantu is using stolen identifying information and electronic equipment at
> his residence to produce counterfeit documents to defraud local businesses and
> citizens.

The affidavit stated that "a specific criminal offense has been committed," and charged and accused that Cantu, "is manufacturing counterfeit checks and identification to commit Fraudulent Use or Possession of Identifying Information and Forgery." The affidavit listed specific items to be seized. While the conclusions of the affiant are not, standing alone, sufficient to establish probable cause, the affidavit also contained specific and detailed facts regarding the alleged

offense.

The affidavit stated that on October 27, 2009, Cantu entered a business in Wichita Falls, Texas on three separate occasions. On each of the three occasions, Cantu passed a counterfeit check, "on the account of Ruben G. Cantu." Each of the counterfeit checks were printed with Cantu's name, but with account and bank routing numbers belonging to an individual other than Cantu. The affiant confirmed with the drawer bank listed on the checks that the checks were counterfeit. He also confirmed with the account holder that Cantu did not have permission to issue or pass checks on his account. The affidavit also stated that each time Cantu passed a counterfeit check, he used his Texas Identification Card to complete the transaction. During the third transaction, a business employee questioned Cantu about the account. In response, Cantu fled the business and left behind the third counterfeit check and his Texas Identification Card. Not only did Cantu leave behind a counterfeit check with his name and someone else's account information, as well as his Texas Identification card, Cantu "was identified on the business security video as the person passing the counterfeit check." Finally, the affiant stated that he confirmed with the United States Postal Service that Cantu stated received mail at the address to be searched.

These facts show that Cantu possessed "identifying information," *i.e.* the bank account numbers and routing numbers of another individual, and used this information to obtain funds without the consent or permission of the account holder to possess the information or pass the checks. Therefore, the magistrate could reasonably infer that Cantu stole someone else's account and bank routing information. Accordingly, we find that in their totality, the allegations in the affidavit clearly set forth sufficient facts to establish there was at least a fair probability or substantial chance that a specific criminal offense had been committed. *See* TEX.CODE

CRIM.PROC.ANN. art. 18.01(c),(i).

Under these facts, the affiant also provided sufficient details evidencing that Cantu was tied to the counterfeiting scheme, and that the items to be seized constitute evidence of the offense. *See* TEX.CODE CRIM.PROC.ANN. art. 18.01(c)(2). From the fact that Cantu cashed multiple counterfeit checks with his name printed on them but with stolen account information from another individual. the magistrate could reasonably infer that Cantu was generating or manufacturing such counterfeit checks. It is also reasonable to infer that in manufacturing these counterfeit checks Cantu would need a "computer, check stock, ink, and banking numbers." Moreover, it is a reasonable inference that someone engaged in this type of criminal activity would possess, "notes, electronic recording devices, identification cards, and any other items that constitute evidence in identity theft and forgery."

In addition, the affidavit stated that: (1) date of the alleged incident was October 27, 2009; (2) the supporting affidavit was filed three days later on October 30, 2009; (3) the search warrant issued and executed the same day the affidavit was filed; and (4) the affiant stated that he confirmed Cantu received mail at the address to be searched. Based on the time frame, coupled with the fact that the affiant confirmed Cantu received mail at the address to be searched, it is reasonable to infer that Cantu currently resided there at the address. *See State v. Cotter*, 360 S.W.3d 647, 653 (Tex.App.--Amarillo 2012, no. pet.). Therefore, we conclude that the magistrate could have reasonably inferred there was at least a "fair probability" or a "substantial chance" that the items to be seized would be found at Cantu's residence. *See Gates*, 462 U.S. at 239, 103 S.Ct. at 2333; *Cotter*, 360 S.W.3d at 653, *citing State v. Moore*, 2007 WL 4305374, at *5 (Tex.App.--Dallas Dec. 11, 2007, pet. ref'd)(not designated for publication).

Giving due deference to the magistrate's decision to issue the search warrant, and

applying the applicable law to the facts in this case, we conclude that the affidavit provided the magistrate with probable cause necessary for the issuance of a search warrant of appellant's house. *See Gates*, 462 U.S. at 236, 103 S.Ct. at 2331; *Rodriguez*, 232 S.W.3d at 59-60; *see also Duncan*, 72 S.W.3d at 806. Accordingly, we sustain the State's sole point. The order of the trial court is reversed and remanded.

July 31, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)