

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00033-CR
No. 02-25-00034-CR

———————————————

CHRISTIAN WALTER REWOLDT, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court Nos. 1795082, 1812979

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Christian Walter Rewoldt appeals his convictions for possession of child pornography and tampering with physical evidence. *See* Tex. Penal Code Ann. §§ 37.09(c), 43.26(d). In his sole issue, Rewoldt argues that the trial court erred by denying his motion to suppress evidence obtained pursuant to what he claims was an illegal search warrant based on an affidavit that failed to establish probable cause. Because we conclude that the magistrate had a substantial basis for determining that probable cause existed, we affirm.

## I. Background

Rewoldt was suspected of possessing child pornography after the Mansfield Police Department received a cyber tip that Google accounts and an IP address associated with Rewoldt had been used to view, upload, and store files containing child pornography. Detective Sheldon Peacock investigated the cyber tip and, believing that Rewoldt was in possession of child pornography, prepared a search-warrant affidavit requesting to search Rewoldt's residence. The affidavit provided the details of the cyber tip, described Detective Peacock's investigation of the cyber tip, and explained how Rewoldt had been identified as the suspect. Detective Peacock averred that, based on his investigation, he "ha[d] probable cause to believe that . . . Rewoldt or other persons unknown at the [residence] are in possession of child pornography and have engaged in the distribution (promotion) of child pornography."

A magistrate determined that probable cause existed and issued a search warrant for Rewoldt's residence. When officers arrived at Rewoldt's residence to execute the search warrant, they found him deleting files from his computer. The officers were able to stop Rewoldt and then seized the computer and other electronic devices found inside the residence that ultimately contained child pornography. Rewoldt was arrested and charged with five counts of possession of child pornography and one count of tampering with physical evidence.

Before trial, Rewoldt filed a "Motion to Suppress Evidence Obtained by Illegal Search Warrant," seeking to suppress all evidence found during the search of his residence. He argued that the search was invalid and without probable cause because the search-warrant affidavit had concluded without evidence that child pornography could be found in the residence, that he was "in charge of and controlled" the residence, and that he was in possession of child pornography at the residence. He asserted that Detective Peacock had failed to link Rewoldt's IP address to the residence or to explain how he had identified the residence as Rewoldt's physical address. After hearing Rewoldt's motion to suppress, the trial court denied it and set the case for trial.

Rewoldt entered an open plea of guilty to each count. The trial court accepted his guilty pleas and sentenced him to seven years on each of the five counts of possession of child pornography with the sentences to run consecutively. On the tampering count, the trial court sentenced Rewoldt to seven years with the sentence to

run concurrently with the possession-of-child-pornography sentences. This appeal followed.

## II. Discussion

Rewoldt argues that the trial court should have suppressed the evidence obtained through the search warrant because the search-warrant affidavit failed to establish probable cause that evidence of a crime would be found at his residence. We disagree.

### A. Standard of Review and Probable Cause

Probable cause to support the issuance of a search warrant exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location. *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022). This is not a demanding standard. *Id.* A search-warrant affidavit must be read in a commonsense and realistic manner, and a magistrate may draw reasonable inferences from the facts and circumstances contained in the four corners of the affidavit. *Martin v. State*, 620 S.W.3d 749, 763 (Tex. Crim. App. 2021); *see also Baldwin*, 664 S.W.3d at 130 ("Reviewing courts should not invalidate a warrant by interpreting an affidavit in a hyper-technical rather than a commonsense manner.").

When reviewing a magistrate's determination of probable cause to issue a search warrant, we apply a highly deferential standard of review because of the Fourth Amendment's strong preference for searches conducted pursuant to a warrant over

4

warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011); *see Baldwin*, 664 S.W.3d at 130 ("[R]eviewing courts give great deference to a magistrate's probable[-]cause determination to encourage police officers to use the warrant process."). We will uphold the probable-cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen v. State*, 143 S.W.3d 808, 810 (Tex. Crim. App. 2004).

Our duty is simply to ensure that the magistrate had a substantial basis for determining that probable cause existed. *See Baldwin*, 664 S.W.3d at 130. When in doubt, we should defer to all reasonable inferences the magistrate could have made from the four corners of the affidavit, including the magistrate's implicit findings. *Id.*; *McLain*, 337 S.W.3d at 271–72; *see also State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) (noting that a reviewing court must review a search-warrant affidavit "realistically[] and with common sense"). Just as the magistrate could look only to the four corners of the affidavit in reaching its probable-cause determination, our review is likewise limited to the four corners of the affidavit. *Martin*, 620 S.W.3d at 766 n.24.

## B. The Search-Warrant Affidavit

In the affidavit, Detective Peacock identifies the property to be searched as "[###] Moss Ct., Mansfield, Tarrant County, Texas 76063. The residence is a

single[-]story tan and multi[-]colored brick dwelling. On the left side of the garage is a stone placard with the house numbers [###]. The roof has grey shingles with white trim." Attached to the affidavit is a photograph of the residence. Detective Peacock attests that the residence is "in [the] charge of and controlled by" Rewoldt.

Detective Peacock also describes in the affidavit his tenure and experience as an investigator:

> Affiant (Det. Sheldon Peacock) is a [p]eace [o]fficer employed by the Mansfield Police Department. Affiant has been a peace officer for approximately eighteen (18) years and has investigated criminal offenses . . . . Affiant is currently assigned as a Detective with the Mansfield Police Department. During Affiant's career as a peace officer, [he] has gained experience and training with interview and interrogation techniques, the preparation and execution of both probable cause arrest and search warrants, and criminal investigations. Affiant is responsible for the investigation of [p]ossession of child pornography and other offenses involving the sexual exploitation of children. Affiant has participated in all the normal methods of investigation, including but not limited to the general questioning of suspects, victims, and witnesses.

Detective Peacock then begins describing the cyber tip from Google and his investigation:

> On Tuesday, August 23rd 2023[,] Det. Ramirez and I were assigned to investigate Cybertip #160779870. A summary of the tip reported that there were 5 files uploaded, 0 of them were viewed by the ESP and 0 of them were made publicly available.
>
> The submitted [sic] of the tip was listed as Google/Google Reviewer.

The affidavit lists the five files by name, IP address, date, and time uploaded. All of the files were uploaded via Google at the IP address

6

"2600:1700:f0e0:8do:dda9:e1d1:1121:c2c," and all of the files were uploaded on April 21, 2023, between 4:30 p.m. and 6:00 p.m. After reviewing one of the files—a video—Detective Peacock determined that it contained child pornography.[1]

Following his description of the files, Detective Peacock explains how Rewoldt was identified as the suspect:

> The suspect information provided in the Cybertip returned to Christian Rewoldt. The cellphone number associated with Christian Rewoldt is [XXX-XXX-XXXX] and a date of birth of 02/24/1958. The email addresses associated with Christian Rewoldt are captainwalterrabbit@gmail.com and crewoldt@netscape.net.
>
> I ran a Texas Driver's License check and found a male subject with Texas Driver's License #[XXXXXXXX] (REWOLDT, CHRISTIAN WALTER W/M 02/24/1958, 6'02" 180 LBS) through TCIC/NCIC.
>
> On 8/23/2023 Crime Analyst Gross attempted to locate social media connected to the emails of Christian Rewoldt. Analyst Gross was provided with the following two email addresses:
>
> captainwalterrabbit@gmail.com
> crewoldt@netscape.net
>
> Analyst Gross located Christian's Facebook account and noted the username was "crewoldt[."] She searched other social media profiles for this username and located numerous accounts which appear (based on content) to belong to Christian. I was unable to confirm what email addresses are associated with these accounts.

---

[1] In the affidavit, Detective Peacock describes in detail what he saw in the video. Due to the sensitive nature of the topic, and because Rewoldt does not challenge whether the contents of the file constitute child pornography, we forgo a detailed description of the video. There is no reason to lengthen this opinion with a graphic description of child pornography.

Based on the information provided by Google that the Google accounts associated with Christian Rewoldt were used to view, upload[,] and[/]or store images or videos[, a]t least one of these videos [was] confirmed to be child pornography.

Affiant has probable cause to believe that Christian Rewoldt or other persons unknown at [### Moss Ct.] are in possession of child pornography . . . .

. . . .

[I]f a computer or electronic storage device is found [at ### Moss Ct.], there is probable cause to believe those records and information sought will be stored in that computer or electronic storage device. This is due to the increasing tendency to store and transmit documents in electronic form . . . and the nature of the alleged offense(s) which directly employs computers . . . .

The rest of the affidavit provides definitions and other information about computers, electronic storage devices, IP addresses, and child pornography, including the following:

An Internet Protocol address (IP address) is a value assigned to a device participating on a network utilizing Internet Protocol. It serves as a device identifier and establishes a location on the network. IP addresses are used for devices connected to the Internet as well as devices connected to private networks such as home networks . . . .

Each device connected to the Internet is assigned an IP address . . . .

. . . .

. . . Messages sent over the Internet to devices on a private network are addressed to the public IP address of the private network's router. Once received by the router, the messages are forwarded to devices on the private network based on the configuration of the router.

8

Ranges of public IP addresses are assigned to specific entities which in turn often assign specific IP address[es] to other entities. These entities are generally able to provide details about a specific IP address within their assigned range such as subscriber information or physical location of the device or router utilizing the public IP address.

. . . .

Affiant is aware through experience and training . . . that the majority of individuals who intentionally access and possess child pornography are persons who are sexually attracted to children. . . .

These individuals generally prefer to store child pornography in electronic form on computers and electronic storage devices. This allows for the inexpensive storage of large collections of child pornography which are readily accessible to a computer for viewing, replication, and sharing with others via the Internet or other computer network.

These individuals typically collect multiple images and/or videos of child pornography and these collections are generally in excess of what is initially detected by law enforcement. . . .

These individuals often store child pornography on more than one computer or electronic storage device. Data is easily moved between different devices and those who possess child pornography have compelling reasons to do so, such as . . . transferring materials to a device that can be transported and accessed outside their residence . . . . In addition, many individuals utilize remote storage (cloud storage) providers such as . . . Google Drive . . . .

. . . .

In addition to child pornography, these individuals often have collections of child erotica. These are materials or items that are sexually arousing to persons having a sexual interest in children[] but are not necessarily obscene or do not necessarily depict children in sexually explicit poses or positions.

At the end of the affidavit, Detective Peacock explains that

> [a]ll information noted in this affidavit for search warrant has been related to Affiant by the person(s) and/or source(s) attributed or referenced. . . . Because the sole purpose of this affidavit is to establish probable cause that a criminal offense has occurred, not every relevant fact known to me, or to other investigators, is included within. Rather, only those facts necessary to establish probable cause have been discussed.

## C. Analysis

Rewoldt contends that the magistrate's probable-cause determination was based on impermissible inferences linking him to the physical address listed in the search-warrant affidavit—his residence—and concluding from an IP address linked to him that his residence contained evidence of the alleged crime.[2] Specifically, he argues that the affidavit failed to establish (1) "where any of the items identified in the cyber[ ]tip came from or were otherwise located at" the residence; (2) that "any other child pornography or other contraband would be found at" the residence; and (3) that he resided at the residence, particularly how Detective Peacock "*discovered*" the address.

Reviewing the affidavit in a commonsense and realistic manner and looking at the totality of the circumstances, we conclude that the search-warrant affidavit meets

---

[2]In his reply brief, Rewoldt argues that the State waived its responsive argument—that the magistrate's inferences are "common sense"—by inadequate briefing under Appellate Rule 38.1(i). But Rule 38.1 lists the requirements of an Appellant's brief, not an Appellee's brief, and the "common sense" to which the State refers in its brief is the requirement that reviewing courts read search-warrant affidavits with common sense. *See Duarte*, 389 S.W.3d at 354.

the highly deferential standard requiring only a "fair probability" that child pornography would be found at Rewoldt's residence. *See Baldwin*, 664 S.W.3d at 130.

From the four corners of the affidavit, the magistrate could directly find the following facts: (1) Detective Peacock was a detective with the Mansfield Police Department and investigated possession-of-child-pornography offenses and other offenses involving the sexual exploitation of children; (2) Detective Peacock had been a peace officer for approximately eighteen years and had experience and training in these types of criminal investigations, including the preparation and execution of probable-cause search warrants; (3) on August 23, 2023, Detective Peacock was assigned to investigate a cyber tip that had been submitted by Google; (4) the cyber tip indicated that between 4:30 p.m. and 6:00 p.m. on April 21, 2023, there were five files uploaded by a Google account at IP address 2600:1700:f0e0:8do:dda9:e1d1:1121:c2c; (5) Detective Peacock reviewed one of the files and determined that it was child pornography; (6) the "suspect information" provided by Google in the cyber tip returned to Rewoldt; (7) the Google accounts and IP address associated with Rewoldt were used to view, upload, and store child pornography; (8) a crime analyst was provided with Rewoldt's email addresses and was able to locate his social media accounts; (9) Detective Peacock ran a Texas Driver's License check through TCIC/NCIC; and (10) Detective Peacock found Rewoldt's driver's license information. Additionally, the affidavit included a

11

description of the Moss Court residence and attached a photograph of the front of the house.

Given these direct facts, the magistrate could have reasonably inferred any of the following: (1) Detective Peacock identified "[###] Moss Ct." as Rewoldt's residence from county or public records; (2) Detective Peacock identified "[###] Moss Ct." as Rewoldt's residence from his TCIC/NCIC search; (3) Detective Peacock identified "[###] Moss Ct." as Rewoldt's residence because it was the address on Rewoldt's driver's license; and (4) the computers or other electronic devices used by Rewoldt to access his social media and Google accounts and to view and upload child pornography would be at his residence. *See United States v. Jackson*, No. 20-30778, 2022 WL 1548669, at *4 (5th Cir. May 16, 2022) (noting that detective linked defendant to property to be searched by address listed on his driver's license and upholding search-warrant affidavit even though it did not include that information); *United States v. Flanders*, 468 F.3d 269, 271–72 (5th Cir. 2006) (noting, in review of probable-cause determination that defendant's home computer and electronic storage contained child pornography, the "general observation that few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime" (internal quotes omitted)); *Griffin v. State*, No. 03-19-00429-CR, 2020 WL 7640149, at *12 (Tex. App.—Austin Dec. 23, 2020) (mem. op., not designated for publication) (concluding that, "[a]lthough the affidavit d[id] not explicitly set out how [the officer] learned" the defendant's address, the magistrate could have reasonably inferred from the officer's

12

description of his training and experience in similar cases and from his use of the defendant's driver's license in the investigation that the officer had identified the address from county or public records), *pet. ref'd*, 662 S.W.3d 470 (Tex. Crim. App. 2021); *Wrinkle v. State*, No. 04-17-00715-CR, 2018 WL 6793529, at *5 (Tex. App.— San Antonio Dec. 27, 2018, no pet.) (mem. op., not designated for publication) (upholding affidavit linking defendant to property to be searched when affidavit provided the property's address, stated that defendant had control of the property, described the property in detail, and stated that defendant slept there); *Aguirre v. State*, 490 S.W.3d 102, 112–13 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (concluding that, even though affidavit did not "expressly refer to" property as defendant's residence or explain how detective obtained vehicle-registration information linking defendant to the property, magistrate could have reasonably inferred (1) that defendant resided at and would likely possess evidence of offense at property to be searched when affidavit averred that the property was a home "in the charge [of], controlled by, or used by" defendant; provided descriptions, registration numbers, and VINs of his vehicles; and stated that his personal vehicle was registered to the property and (2) that the vehicle-registration information "was available to the detective as a police officer"); *Ex parte Jones*, 473 S.W.3d 850, 856 (Tex. App.— Houston [14th Dist.] 2015, pet. ref'd) (concluding that magistrate could have reasonably inferred that defendant possessed child pornography and that child pornography could be found at his residence when affidavit stated that an individual

using a Hotmail.com email address had purchased monthly memberships to child-pornography websites, that payment for the memberships had been made via PayPal, and that PayPal had provided investigators with buyer contact information identifying the Hotmail.com email address as defendant's); *State v. Duncan*, 72 S.W.3d 803, 807 (Tex. App.—Fort Worth 2002, pet. dism'd) (recognizing that records of sexual activity, such as child pornography, would likely be kept in one's home, "a place not subject to the eyes of the public absent invitation"); *see also United States v. Procopio*, 88 F.3d 21, 28 (1st Cir. 1996) (explaining that "[t]he focus in a warrant application is usually on whether the suspect committed a crime and whether evidence of the crime is to be found at his home" and recognizing that, while the defendant's address is not "unimportant[,] . . . it is easy to understand how both the officer applying for the warrant and the magistrate might overlook a lack of detail on a point often established by the telephone book or the name on a mailbox"); *Rodriguez v. State*, 232 S.W.3d 55, 64 (Tex. Crim. App. 2007) ("The proper analysis of the sufficiency of a search-warrant affidavit is not whether as much information that could have been put into an affidavit was actually in the affidavit.").

Additionally, the magistrate could have reasonably inferred from Detective Peacock's description of the Moss Court house and the attached photograph that Detective Peacock drove to the house as part of his investigation. *See Griffin*, 2020 WL 7640149, at *12 (reaching similar conclusion based on affidavit's detailed description of property to be searched).

Regarding Rewoldt's complaints that the affidavit failed to establish the original source of the child pornography, where in his house the child pornography was located, or whether any other child pornography or contraband was in his house, requiring such facts in this case would contravene the highly deferential standard we must apply when reviewing a magistrate's probable-cause determination, which we will not do. *See Rodriguez*, 232 S.W.3d at 64. Indeed, "[t]he issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that *are* in the affidavit, not those that are omitted from the affidavit." *Id.* at 62. And here, the combined legal force of the facts in Detective Peacock's affidavit established a fair probability that child pornography would be found in Rewoldt's home.

Similarly, we disagree with Rewoldt's contention that Detective Peacock's investigation failed to "tie" the IP address provided by Google in the cyber tip to Rewoldt's physical address. In the affidavit, Detective Peacock stated that he "participated in all the normal methods of investigation." *See Aguirre*, 490 S.W.3d at 111 (permitting the magistrate to infer the source of the detective's information when affidavit did not specifically state how she obtained that information but stated that she "recited the facts based on her 'personal investigation'"); *see also Rodriguez*, 232 S.W.3d at 64 ("It is not necessary to delve into . . . contrary inferences that could have been made by the magistrate."). Moreover, the cyber tip had already revealed the identity of the person associated with the Google account and IP address as Rewoldt,

15

so it was not necessary for Detective Peacock to take that investigatory step. *Cf. Bordelon v. State*, 673 S.W.3d 775, 786 (Tex. App.—Dallas 2023, no pet.) (describing how detective identified defendant as owner of the IP address provided by a cyber tip reporting "an internet user" for child pornography); *State v. Cotter*, 360 S.W.3d 647, 652–53 (Tex. App.—Amarillo 2012, no pet.) (concluding that magistrate could have reasonably determined that child pornography would be found at defendant's residence when affidavit stated that officer had traced IP address associated with an *unknown user* of a screen name to defendant and "his home address"). In any event, we will not delve into all the facts that ostensibly could have been included in the affidavit. *See Rodriguez*, 232 S.W.3d at 64.[3]

In light of the direct evidence in the affidavit and deferring to all the reasonable inferences the magistrate could have made from that evidence, we conclude that the magistrate had a substantial basis for determining that probable cause existed. Accordingly, we hold that the trial court did not err by denying Rewoldt's motion to suppress.

---

[3]Rewoldt cites *Ansari v. State* for the contention that Detective Peacock skipped a "standard investigatory step" by not detailing in his affidavit how he linked an IP address to a physical location. No. 02-22-00170-CR, 2023 WL 5615804, at *3 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op., not designated for publication). But *Ansari* did not analyze the sufficiency of or even mention a search-warrant affidavit, and the investigatory details described in *Ansari* were provided during trial testimony, not an affidavit as Rewoldt suggests. *Id.* at *1–4.

### III. Conclusion

Having concluded that the trial court did not err by overruling Rewoldt's motion to suppress, we affirm the trial court's judgments.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 8, 2026